**Eugene LOWE and Margaret Lowe, h/w**

v.

**JOHNS–MANVILLE CORPORATION, Johns-Manville Sales Corporation, Raybestos Manhattan, Owens-Illinois, Celotex, Eagle-Picher, Keene Corporation, Nicolet Industries, Inc., Amatex, Pittsburgh-Corning, Unarco, Armstrong World, GAF Corporation, Fibreboard Corporation, Pacor, Inc., Porter Hayden, Forty Eight Insulations, Inc., Dar Industrial Products, Owens-Corning Fiberglas, Southern Textile Company, H.K. Porter Co.**

**Civ. A. No. 82–2131.**

United States District Court, E.D. Pennsylvania.

March 20, 1985.

Lawrence D. Levin, Wyncote, Pa., Martin Greitzer, Philadelphia, Pa., for plaintiffs.

Robert St. Leger Goggin, Philadelphia, Pa., for Johns-Manville Corp. and Johns-Manville Sales Corp.

Arthur Makadon, Philadelphia, Pa., for Raybestos Manhattan.

Nathan A. Schachtman, Peter J. Lynch, Cherry Hill, N.J., for Owens-Illinois.

Thomas O. Malcolm, Edmund K. John, Andrew J. Trevelise, West Chester, Pa., for Celotex.

Victor L. Drexel, Norristown, Pa., Francis E. Shields, Philadelphia, Pa., for Amatex.

Edward J. David, Philadelphia, Pa., for Pittsburgh-Corning.

Dudley Hughes, Philadelphia, Pa., for Unarco.

Joseph M. O'Neill, Philadelphia, Pa., for Armstrong World.

Charles J. Kalinoski, Edward Greer, Philadelphia, Pa., for Gaf Corp.

Barbara Pennell, Joseph R. Thompson, Philadelphia, Pa., for Eagle-Picher.

John Ledwith, Leslie A. Miller, Francis G. Wenzel, Jr., Philadelphia, Pa., for Keene Corp.

Mark O. Denehy, Philadelphia, Pa., for Nicolet Industries, Inc.

Peter P. Liebert, III, Philadelphia, Pa., for Fibreboard Corp.

G. Daniel Bruch, Jr., Philadelphia, Pa., for Pacor, Inc.

John Patrick Kelley, Philadelphia, Pa., for Owens-Corning Fiberglas.

Joseph H. Foster, Philadelphia, Pa., for Southern Textile Co. and H.K. Porter Co.

## OPINION

LUONGO, Chief Judge.

In this lawsuit, plaintiffs Joseph Eugene Lowe and James Albert Lowe ("plaintiffs") seek recovery as personal representatives of Eugene Lowe (Lowe) for injuries sustained by Lowe as a result of his occupational exposure to asbestos. The defendants have moved for summary judgment on the ground that plaintiffs' claims are barred by the statute of limitations. Because I conclude that a genuine issue of material fact exists as to when Lowe discovered that he suffered from an asbestos-related disease, I will deny the motions.

### I.

This case was originally filed as a personal injury action by Eugene Lowe and his wife Margaret Lowe on May 14, 1982. Mr. Lowe died testate on September 13, 1982, and the named plaintiffs were later appointed as co-administrators of his estate. A motion for substitution of parties was filed and Lowe's death was suggested upon the record on February 20, 1985. I will grant the motion for substitution.[1]

### II.

The question presented by defendants' motions is whether it can be said, as a matter of law, that Lowe had "discovered" or ought to have "discovered" that he had an asbestos-related disease in excess of two years before the filing of this action. The parties agree that if Lowe could not be charged with such knowledge, application of the "discovery rule" exception to the statute of limitations would preserve plaintiffs' claim. The parties dispute the impact that a ruling in defendants' favor would have: Plaintiffs argue that, under Pennsylvania's choice of law principles, New Jersey law defines plaintiffs' substantive claims,[2] and that under New Jersey law, Lowe's discovery of some asbestos-related maladies would not preclude recovery for subsequently developed, far more serious disorders.[3] Defendants assert that Pennsylvania law governs accrual of actions in cases brought in Pennsylvania,[4] and that Pennsylvania precedent mandates dismissal of all asbestos-related claims if claims with

---

1. Plaintiffs' motion for substitution cites the New Jersey Survival Act as authority for the proposition that Mr. Lowe's death did not extinguish his claim. No party has suggested that Pennsylvania law is to the contrary, so I do not decide any choice of law questions on this issue.

2. *Kelly v. Johns-Manville Corp.*, 590 F.Supp. 1089 (E.D.Pa.1984).

3. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

4. *Cowgill v. Raymark Industries, Inc.*, C.A. 83–4196 slip. op. at 7, n. 2 (E.D.Pa. Feb. 1, 1985) (Huyett, J.).

respect to Lowe's initial asbestos-related injury are time-barred.[5]

### III.

In support of their motions for summary judgment, defendants have presented evidence that Mr. Lowe knew or should have known in December, 1979, both that he had pleural thickening, and that his illness was related to asbestos exposure. To establish the latter proposition, defendants point out that in July, 1978 Lowe completed a "Dust Exposure Record" on which he acknowledged that he had been exposed to asbestos. With respect to Lowe's knowledge of his injury, defendants contend that in December, 1979 Lowe was informed by his employer's physician that he suffered from pleural thickening. Because I find the issue of Mr. Lowe's knowledge of his illness dispositive of the present motions, I must examine with great care the evidence upon which defendants predicate Lowe's discovery of his disease.

Eugene Lowe was employed at Mobil Oil Corporation's refinery in Paulsboro, New Jersey at various times from 1942 until this suit was filed. Lowe's employment caused him to come in contact with asbestos products as well as the dust and fibers that accompany the use of such products. Because of his exposure to asbestos, Lowe participated in Mobil's Asbestos Surveillance Program, a medical examination program designed to monitor the effects of asbestos exposure among Mobil's employees.

Pursuant to Mobil's Asbestos Surveillance Program, participating employees were invited to group discussions of the effects of asbestos exposure. On those occasions, employees were provided a description of asbestos-related diseases, the risks of such diseases and related complications, and they were informed of the effect of smoking on persons exposed to asbestos. In addition to group discussions, the Asbestos Surveillance Program included personal interviews between individual employees and Mobil's staff physicians for the purpose of discussing the results of the employees' physical examinations and x-rays.

To establish that Lowe learned of his finding of pleural thickening in a group discussion and personal interview, defendants rely upon Mobil's medical records concerning Lowe's treatment as well as the deposition testimony of Dr. John P. McNally, a Mobil physician. Lowe's medical records contain two notations of particular relevance. The first is a notation dated 12/18/79, signed by Dr. McNally, which states findings for Lowe of "moderate R plaque" and "questionable fibrosis," and that Lowe was to be called in for a "group chest consult." The second, dated 12/20/79 and also signed by Dr. McNally, states that Lowe was a "participant in [a] group discussion of asbestos related disease" and that he was "informed of his own finding of pleural thickening."

Dr. McNally's deposition testimony described both the group discussions and personal interviews. The group sessions were utilized, according to McNally, to describe the effects of asbestos exposure in layman's terms with the assistance of visual aids such as anatomic sketches. The personal interviews, which Dr. McNally termed "confessionals," were used to explain each employee's individual findings so that the individual "not only knew what the basic disease was but that he knew what his position in it was."

When asked specifically about his contacts with Lowe, McNally stated that he remembered Lowe, that having refreshed his recollection with Lowe's medical records he recalled Lowe participating in a group discussion, that after review of his notes he found no reason to believe he conducted the group discussion in a manner different from his ordinary practice, and that there would be no reason for his notation of having informed Lowe of his finding of pleural thickening if he had not conducted a personal interview with Lowe on December 20, 1979.

---

**5.** *Cathcart v. Keene Industrial Insulation,* 324 Pa.Super. 123, 471 A.2d 493 (1984).

Plaintiffs argue that whether McNally informed Lowe of his pleural thickening remains a genuine issue of material fact for four reasons: First, plaintiffs argue that a jury should evaluate Dr. McNally's rather equivocal answers with respect to his specific conversations with Mr. Lowe. Critical to plaintiffs' argument in this regard was McNally's admission in his deposition that he did not specifically remember his personal interview with Mr. Lowe. Second, plaintiffs dispute that the information conveyed by Dr. McNally sufficiently apprised Lowe that he was suffering from an asbestos-related disease. Plaintiffs argue that McNally so minimized Lowe's findings that it would be unreasonable to charge Lowe with discovery of his illness. Third, plaintiffs point out that subsequent entries in Lowe's medical records indicate that Lowe was to be informed of similar findings in September, 1980. This, plaintiffs argue, would be superfluous if Lowe had actually been so informed in December, 1979. Finally, as evidence of Lowe's state of mind prior to 1982, plaintiffs have proffered affidavits from Margaret Lowe, and James Lowe (Eugene Lowe's son) and Dr. Rudolph T. DePersia (Eugene Lowe's personal physician). Mrs. Lowe's affidavit states that she and her husband discussed his physical examinations including the December, 1979 examination, that Mr. Lowe told her the results of such examinations were good, and that Mr. Lowe did not mention having an asbestos-related disease prior to his hospitalization in March, 1982. James Lowe's affidavit states that, when Mr. Lowe became ill in March, 1982, he went to Mobil's benefits department to secure payment for his father's medical bills, that he was sent to see Dr. McNally, and that Dr. McNally told him that Eugene Lowe did not have asbestosis. Dr. DePersia's affidavit states that he did not diagnose Mr. Lowe as suffering from any asbestos-related disease before 1982, and that he does not recall any discussions of asbestos-related disease with Mr. Lowe before 1982.

## IV.

Federal Rule of Civil Procedure 56(c) permits entry of summary judgment on defendants' motion if defendants have shown that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The purpose of rule 56 is "to eliminate a trial in cases where it is unnecessary and would only cause delay and expense." *Goodman v. Mead Johnson & Company*, 534 F.2d 566, 573 (3d Cir.1976) (footnote omitted), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). In evaluating the evidence presented in support of a motion for summary judgment, the nonmoving party is entitled to have resolved in its favor all conflicts in evidence, and all disputed inferences from those facts. Credibility, of course, may not be resolved at the summary judgment stage unless the nonmovant's position is plainly unreasonable. *Losch v. Borough of Parkesburg, Pennsylvania*, 736 F.2d 903, 909 (3d Cir. 1984).

Applying these standards to the facts in this record, I am compelled to deny defendants' motion for summary judgment. Although defendants have produced rather persuasive evidence that Mr. Lowe was informed of his finding of pleural thickening, they have not established that a reasonable jury could not reject Dr. McNally's explanation of his notations in Lowe's medical records. Dr. McNally could not himself state that he recalled informing Lowe of his findings; McNally's testimony is an interpretation of his handwritten notations in light of his regular medical practice. It will be necessary for a jury to evaluate the validity of the inferences drawn by Dr. McNally from those handwritten notes.

This conclusion is perhaps best confirmed by a review of several of the asbestos cases in which the Pennsylvania Superior Court has articulated and applied Pennsylvania's "discovery rule" exception to the statute of limitations. In *Price v. Johns-Manville Corporation*, —— Pa.Super. ——, 485 A.2d 466 (1984), the court affirmed a summary judgment granted against the

plaintiff where the injured person had sought and received worker's compensation on the basis of asbestos-related impairments some fifteen years before suit was filed. In that case, conclusive evidence of the plaintiff's knowledge of his disease was established through the plaintiff's own statements. Likewise, in *Cianfrani v. Johns-Manville Corporation,* —— Pa.Super. ——, 482 A.2d 1049 (1984), the court affirmed a summary judgment where, *inter alia,* the plaintiff admitted that he was advised of his asbestosis and filed a "Federal Employees Notice of Injury and Occupational Disease" four years before bringing suit. To similar effect is *Berardi v. Johns-Manville Corporation,* —— Pa.Super. ——, 482 A.2d 1067 (1984), a case in which summary judgment was upheld where the decedent, seeking worker's compensation, admitted that he had asbestos-related lung disease four years before suit was brought, and wrote a letter to the Department of Labor explaining the connection between asbestos exposure and his illness more than two years before filing of the complaint.

In the leading case *Cathcart v. Keene Industrial Insulation,* 324 Pa.Super. 123, 471 A.2d 493 (1984), the court affirmed summary judgment where the plaintiff's deposition established that, also in connection with a disability determination, he knew of his "asbestosis lung" and its cause more than two years before suit was filed. In *Volpe v. Johns-Manville Corporation,* 323 Pa.Super. 130, 470 A.2d 164 (1983), the court sustained an order granting summary judgment where the plaintiff testified that, more than three years before filing suit, he was informed that he had asbestosis and read articles describing the dangers of exposure to asbestos. Finally, in *Staiano v. Johns-Manville Corp.,* 304 Pa.Super. 280, 450 A.2d 681 (1982), the court affirmed the grant of summary judgment where the plaintiff filed a "Federal Employees' Notice of Injury or Occupational Disease" form on which he claimed injury from occupational exposure to asbestos in 1972, approximately five years before suit was filed.

It is apparent from this review of the Superior Court's cases, that the "discovery rule" has not been construed as an authorization for judicial fact-finding of the underlying events upon which defendants seek to charge an injured party with discovery of his injury and its cause. The Superior Court, in accord with federal practice, has permitted summary judgment only where the factual record left no genuine dispute as to when the critical information was imparted to the plaintiff.

In the case at bar, I cannot determine as a matter of law that Mr. Lowe had the requisite notice of his injury in December, 1979. That determination can only be made after an assessment of the accuracy of Dr. McNally's conclusion that in Lowe's case he followed his usual practice of informing the employee of his findings, describing their complications, and making appropriate inscriptions in the employee's medical record. Making such an assessment is a function for a jury.

■ Defendants properly assert that the test for applicability of the discovery rule includes a heavy burden of inquiry upon the party seeking to invoke it. *See Pocono International Raceway, Inc. v. Pocono Produce, Inc.,* 503 Pa. 80, 468 A.2d 468 (1983); *Cathcart v. Keene Industrial Insulation,* 471 A.2d at 500; *Ciccarelli v. Carey Canadian Mines, Ltd.,* 757 F.2d 548 at 553 (3d Cir.1985); *O'Brien v. Eli Lilly & Company,* 668 F.2d 704 (3d Cir.1982); *Cowgill v. Raymark Industries, Inc.,* C.A. 83–4196 1:(E.D.Pa. Feb. 1, 1985) (Huyett, J.). As the Pennsylvania Supreme Court has stated, "The 'discovery rule' is … an exception, and arises from the *inability* of the injured, *despite the exercise of due diligence,* to know of the injury or its cause." *Pocono International Raceway,* 468 A.2d at 471 (emphasis in original). In the context of this case, however, defendants' reference to Lowe's duty to inquire puts the cart before the horse: Lowe was obligated to discover the *fact* of his injury only if he had been apprised of facts sufficient to put

him on notice that he suffered from *a disease.* The current record does not establish such notice. Lowe's knowledge of his exposure to asbestos is insufficient in the absence of proof beyond genuine dispute that he also knew he had been injured. For the reasons discussed above, I conclude that it remains a genuine issue of fact whether Dr. McNally informed Lowe of his asbestos-related illness. Moreover, defendants have not established that information from alternative sources should have put Lowe on notice of his injury. Certainly Lowe could not have been expected on his own to diagnose his pleural thickening—a latent disease apparently in its initial stages.[6] Nor have defendants argued that Lowe's case of pleural thickening curtailed his life activities such that he should have been put on guard of a respiratory ailment.[7]

In short, a physician's guidance was necessary to inform Lowe that the effects of his exposure to asbestos had become manifest in a disease. Because that underlying fact has not been established, I cannot say as a matter of law that Lowe should have investigated and discovered the fact of his injury more than two years before suit was filed.[8]

## V.

Because I will deny defendants' motions, I need not presently resolve the effect on plaintiffs' mesothelioma claim of a ruling that plaintiffs' pleural thickening claim is time-barred. That question, which has become debated under the term "second disease rule," would be squarely presented by a jury verdict in favor of defendants with respect to Mr. Lowe's discovery of his pleural thickening. In view of the need for a jury trial at least for the issues discussed in this opinion, and the possibility that our Court of Appeals will decide that issue in *Ross v. Johns-Manville Corp.,* appeal docketed, No. 84-1528 (3d Cir.), I conclude that reserving judgment on that issue would be appropriate. Nevertheless, in the interest of judicial economy, it will be necessary at trial to require the jury to specify at least: (1) whether Lowe discovered his injury and its cause more than two years before suit was brought, (2) the amount of damages for plaintiffs' mesothelioma claim, and (3) the total amount of damages. In that fashion, the verdict can be adjusted according to any intervening decisions of the Court of Appeals or the trial judge's rulings on post-trial motions.

**6.** *Cf. Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959).

**7.** This is a very close case, and it is out of an abundance of caution that I conclude that a jury must determine whether Dr. McNally informed Lowe of his pleural thickening. I acknowledge that *my esteemed colleague Judge Huyett* recently granted a motion for summary judgment on similar facts despite deposition testimony from the decedent that he had not been informed that he had an asbestos-related injury. *Cowgill v. Raymark Industries, Inc., supra.* It is my view of the facts before me, however, that McNally's equivocal responses fail to negate the existence of a genuine issue as to when Lowe was notified of his illness, and that Lowe's duty to inquire became relevant only when he was apprised of the fact of his injury.

**8.** In reaching this conclusion, I have given little weight to the alleged ambiguities in Dr. McNally's notations after December, 1979 and to the "state of mind" affidavits submitted by plaintiffs. I note also that, in view of the foregoing analysis, I have no occasion to consider whether a reasonable jury could conclude that Dr. McNally's explanation of asbestos-related disease failed to put Lowe on notice of his injury.