557 A.2d 1081

**Tan LEVENSON, Appellant,**

v.

**Dr. Roslyn SOUSER.**

Superior Court of Pennsylvania.

Argued Oct. 5, 1988.

Filed April 20, 1989.

134

136

David Parsells, Philadelphia, for appellant.

Robert Devine, Philadelphia, for appellee.

Before CIRILLO, President Judge, and BROSKY, ROWLEY, WIEAND, McEWEN, DEL SOLE, MONTEMURO, BECK and TAMILIA, JJ.

BECK, Judge:

This is an appeal from an order of the Court of Common Pleas of Delaware County partially granting defendant-appellee Dr. Souser's motion for summary judgment on the ground that a portion of plaintiff-appellant Mrs. Levenson's medical malpractice claim was barred by the statute of limitations.

On review of a grant of summary judgment, we must view all the facts in the light most favorable to the nonmoving party and resolve all doubts as to the existence of issues of material fact against the moving party. *Farnell v. Winterloch Corp.*, 106 Pa.Commw. 542, 527 A.2d 204 (1987), *allocatur denied*, 518 Pa. 652, 544 A.2d 963 (1988); *Mariscotti v. Tinari*, 335 Pa.Super. 599, 485 A.2d 56 (1984). We must bear in mind that summary judgment is permissible only in the clearest of cases where all the material facts are free from doubt and the moving party is entitled to judgment as a matter of law. *Id.*

On December 23, 1980, Mrs. Levenson consulted Dr. Souser concerning possible breast augmentation surgery. During this consultation Mrs. Levenson decided to have the operation and made an appointment for surgery to be performed on January 12, 1981. This consultation is largely the focus of Mrs. Levenson's cause of action insofar as it relates to injuries allegedly resulting from this surgery. She contends that Dr. Souser did not inform her of all of the possible risks of the surgery either at this consultation or, for that matter, at any time thereafter. Thus, she contends that the surgery was performed without her informed consent.

The surgery itself was uneventful. However, within a short time after surgery, Mrs. Levenson began to experience discomfort due to hardness of her breasts and was concerned about the disparity in their size and shape. At Mrs. Levenson's deposition, she testified that at her first and apparently second post-operative visits to Dr. Souser, which occurred in mid-January, the doctor told her that the cause of her discomfort was simply post-operative swelling and that she should be patient. The doctor's deposition testimony is consistent with this. The doctor testified that as of the second visit she herself did not know why Mrs. Levenson was having difficulty or even if a complication had arisen since Mrs. Levenson's symptoms could simply have been a part of normal healing. She advised Mrs. Levenson to continue to massage her breasts vigorously because this was usually sufficient to ameliorate the condition.

During the third post-operative visit to Dr. Souser's office on January 27, 1981, Mrs. Levenson contends that she did not see the doctor but that the doctor's assistant told her that she was experiencing capsulization, i.e. an accumulation of restricting scar tissue around the breast which causes pain and hardening of the breast. Mrs. Levenson also testified that this was the first time she knew she was experiencing a complication of some kind.

However, Dr. Souser testified that she did see Mrs. Levenson on that day and told her to continue to massage her breasts vigorously. Dr. Souser's testimony was generally to the effect that since swelling, some hardness of the breasts and some formation of scar tissue are normal temporary results of breast augmentation, it is often difficult to tell when a patient is actually experiencing a complication in the nature of capsulization. Apparently only the passage of time allows a doctor to determine whether capsulization is actually occurring and cannot be remedied through normal massage procedures. Dr. Souser did state, however, that by January 27th there was some cause for concern about Mrs. Levenson's condition.

The testimony of the parties reveals that March 19, 1981 is the most likely date on which it became clear that normal massage techniques would not alleviate Mrs. Levenson's problem and that a further step needed to be taken. This step is called a "closed capsulotomy" or an attempt to apply external pressure to the breast sufficient to "pop" open the capsule of scar tissue. The attempt to do this was first made on March 19th, was unsuccessful and was followed by several more attempts up to and including March 31st. Dr. Souser testified that on March 31st she first told Mrs. Levenson that an "open capsulotomy", which involved popping the scar tissue through a second surgery, and the removal of the old prostheses and insertion of new ones, might be necessary. By May 4th, it became clear that such surgery was required and Mrs. Levenson was so informed. It was also at some time during this period, i.e. April or May 1981, that Mrs. Levenson admits that the thought first crossed her mind that perhaps she had not been told everything she should have before deciding to have the initial surgery.

The second operation was performed on June 5, 1981. Prior to this surgery, Dr. Souser allegedly assured Mrs. Levenson that the chances of the same problem recurring were very slight and that the doctor would apply a new medication during the surgery which would even further reduce the chances of this complication. Nonetheless, shortly thereafter Mrs. Levenson began to experience the same problems as had resulted from the first surgery. She stopped seeing Dr. Souser in July 1981.

Mrs. Levenson consulted with an attorney in September 1981. In October she saw another doctor, Dr. Ardizone, concerning her condition. At this consultation she alleges she was informed for the first time that her post-operative condition was common, experienced by 40–60% of breast augmentation patients, and that it was routine to advise patients of this possible reaction prior to surgery. In May 1982 Mrs. Levenson had the breast implants surgically removed. She instituted suit against Dr. Souser on June 2,

1983, alleging both negligence and lack of informed consent as to both operations Dr. Souser had performed. In the course of pre-trial proceedings, however, Mrs. Levenson's counsel indicated that the negligence aspect of the claim would not be pursued and that informed consent was the plaintiff's theory.

Dr. Souser pled the bar of the statute of limitations in new matter. It is undisputed that the applicable statute is 42 Pa.Cons.Stat.Ann. § 5524, which provides that an action for assault and/or battery must be commenced within two years. Section 5502 generally provides that a statute of limitations begins to run from the time the cause of action accrues. 42 Pa.Cons.Stat.Ann. § 5502.

Mrs. Levenson responded by arguing that the "discovery rule" applied to her cause of action and that since in the exercise of due diligence she did not and reasonably could not have discovered her injury and its cause until either after the second surgery or in October 1981 when she first saw Dr. Ardizone, the two year statute of limitations did not begin to run against her until that time. Thus, she contends that her suit, filed in June 1983, was timely. Mrs. Levenson also argued that Dr. Souser had concealed the true nature of Mrs. Levenson's condition from her by assuring her that the reaction she was having was not of great concern and could easily be remedied. This, Mrs. Levenson contends, also tolled the statute of limitations.

After the taking of depositions, Dr. Souser filed a motion for summary judgment supported by two alternative arguments. First, Dr. Souser argued that the discovery rule does not apply to Mrs. Levenson since, under Pennsylvania law, a cause of action for lack of informed consent is technically an action for assault and battery. In such a case, Dr. Souser contended, the statute of limitations begins to run from the date of the alleged harmful touching, i.e. January 12, 1981, and expires two years later. Alternatively, Dr. Souser contended that even if the rule does apply, Mrs. Levenson was nevertheless barred since she knew or should have known of her injury and its cause as early as

January 27, 1981 when Dr. Souser's assistant told her she was having a complication or, at the latest, in May 1981, when Mrs. Levenson knew a second operation was necessary. Mrs. Levenson again responded by arguing the discovery rule and concealment.

The trial court granted Dr. Souser's motion in part, entering the following order:

> AND NOW, this 17th day of June, 1987, upon consideration of the defendant's Motion for Summary Judgment, plaintiff's response thereto, as well as the memoranda filed by the parties, it is hereby ordered that defendant's motion is granted insofar as any reference to the surgery of January 12, 1981, and any other procedure prior to June 2, 1981, as well as any reference to any injuries which may have resulted therefrom.

This order was accompanied by a very thoughtful opinion in which the trial court agreed, albeit reluctantly, that under Pennsylvania law Mrs. Levenson's action was technically an action for assault and battery. Thus, the court concluded that the discovery rule did not apply since, in the trial court's words:

> all the elements necessary to establish an informed consent case are presented when a medical procedure is performed where the physician has ignored his or her obligation to enlighten the patient as to the perils and alternatives beforehand. As soon as the doctor lays his educated hands on the patient the tort is completed and liability attaches. Unlike negligence cases where the discovery rule clearly applies, manifestation of injury or damage is not part of the prima facie case.

The court, therefore, concluded that the statute of limitations had begun to run on the date of the touching, i.e. the January 12, 1981 surgery.

■ As framed to this court, the central issue is the applicability of the discovery rule to informed consent actions. The issue arises only because of the quirk of Pennsylvania law, first appearing in *Gray v. Grunnagle*, 423 Pa.

144, 223 A.2d 663 (1966), which has been construed to characterize a patient's suit against a physician for lack of informed consent as an action for assault and battery.[1]

1. We note that the precedential value of *Gray* on the precise issue of what form of action a plaintiff has where the plaintiff alleges that his or her physician did not provide the plaintiff all information material to a decision to undergo a medical procedure is unclear. *Gray* was actually a case involving an alleged lack of consent, as compared to a lack of *informed* consent. The plaintiff alleged that he had consented only to the performance of exploratory surgery on his back and yet the defendant doctor had proceeded to perform both exploratory and remedial surgery. Plaintiff was partially paralyzed as a result of the surgery. Although plaintiff had signed a consent form, he had done so while under the care of his first doctor, several days before he came under the care of his second doctor, who actually operated. The trial court had found as a matter of law that the plaintiff had consented to the procedure that was performed.

   Thus, the precise question presented to the *Gray* court was whether there was a factual question for the jury as to whether the plaintiff had consented at all to the performance of the remedial aspects of the surgery. Nonetheless, the court's discussion did not distinguish between the concepts of lack of consent and lack of informed consent. The court merely noted that prior Pennsylvania cases had characterized a lack of consent case as an action for a technical assault and then proceeded to quote at length, and apparently with approval, from numerous out of state cases regarding both lack of consent and lack of informed consent. The *Gray* court appeared to approve the imposition of a duty on a physician to inform a patient not only of the nature of the procedure to be performed, but also of the risks inherent in that procedure. The court concluded that given the state of the evidence in the case before it, a jury question was presented as to whether plaintiff had indeed consented to the operation that was performed.

   Thus, although *Gray* has been repeatedly cited as binding precedent requiring that we analyze lack of informed consent as a technical assault, one might cogently argue that the only issue in *Gray* involved when a jury question is presented as to whether a plaintiff has consented at all to the procedure which was performed.

   The distinction between an allegation of no consent as opposed to an allegation of uninformed consent has been previously drawn. While a lack of any consent at all to the performance of a particular procedure may well give rise to an action for assault or battery, since the touching itself was wholly unauthorized, a lack of informed consent case involves a plaintiff who has consented, albeit without all the information it is the duty of the physician to convey. The latter is particularly susceptible to analysis in a negligence framework, since it focusses on a doctor's affirmative duty to inform as part of the general duty to exerise reasonable care in treating his or her patient. Comment, *Informed Consent in Pennsylvania—The Need for a Negligence Standard,* 28 Vill.L.Rev. 149, 156–58 (1983).

This characterization is clearly out of line with modern cases from numerous other jurisdictions which view such an action as one for negligence. *See Malloy v. Shanahan,* 280 Pa.Super. 440, 446–47, 421 A.2d 803, 805–06 (1980) (Hoffman, J., dissenting) and cases cited therein. Such cases recognize that to analyze a physician's failure adequately to inform a patient of the possible consequences of a medical procedure under the rubric of the law of battery is illogical.

The facts of a typical informed consent case do not at all correspond to the elements of a battery action. For example, battery is an intentional tort yet a doctor's conduct in failing to inform his or her patient is rarely accompanied by any intent to harm the patient. *Id.* The doctor's culpability is based on an omission, i.e. a failure to disclose. Moreover, there is no question that one could posit situations where a patient has been harmed by a doctor's failure to inform and yet the medical treatment performed involves no "touching" at all. *Id.* (prescription of drug without physical administration thereof). Once again, a crucial element of a battery action is missing, and yet the patient has undoubtedly suffered an injury for which the law should provide a remedy.

Analysis of such factual situations within the conceptual framework of negligence, on the other hand, would remedy these difficulties. The analysis would simply focus on whether the physician has breached his or her duty of care, which clearly includes a duty to inform a patient of all information that a reasonably prudent patient would need to know before deciding to undergo treatment. *Id.* Thus, we are of the opinion that to change our law in this manner

We also note that the precedential value of *Gray* as a majority opinion of the Supreme Court on the subject of lack of informed consent is unclear. Only one justice joined Justice O'Brien's lead opinion, wherein the discussion of lack of informed consent is found. Two other justices concurred only in the *result* that a jury question on whether plaintiff had consented was presented. The three remaining justices dissented. This configuration also strongly suggests that the *Gray* case is binding precedent only as to the conclusion that in a battery action for lack of consent to a surgical procedure, where there is conflicting evidence as to the scope of the plaintiff's consent, the question is for the jury.

would represent a salutary modernization of Pennsylvania tort law.

Given the present state of our law, however, we are constrained to continue to analyze informed consent cases as battery actions until and unless our Supreme Court decides otherwise. In this case, the parties and the trial court agree that we must grapple with the difficult question of whether the discovery rule may be applied to extend the time in which a suit for informed consent battery must be commenced. We, on the other hand, find that it is unnecessary to decide this difficult question under the undisputed facts of this case. Under these facts, it is clear that Mrs. Levenson's cause of action for battery arising from the January 12, 1981 surgery was fully accrued in excess of two years before she instituted suit and application of the discovery rule would not lead to a contrary result. Her own testimony reveals that she knew all she needed to know by May 1981 at the latest to put her on notice that she had been injured as a result of the surgery and that, according to Mrs. Levenson, she had not been told of the possibility of this injury resulting from her surgery. Thus, Mrs. Levenson's suit based on a lack of informed consent to her first surgery is barred. However, a full explanation for our holding in this manner necessarily entails a discussion of the proper application of the above-quoted two year statute of limitations to a battery action, when a cause of action for an informed consent action should be deemed to have accrued and therefore, whether the discovery rule has any place in this analysis.

When a statute of limitations applicable to a tort cause of action begins to run depends completely upon the language of the statute of limitations itself, as judicially construed. In most such statutes, the limitations period is said to begin to run when the injury is sustained. *Larthey v. Bland*, 367 Pa.Super. 67, 532 A.2d 456, 458, *allocatur denied*, 518 Pa. 656, 544 A.2d 1343 (1988); *DeMartino v. Albert Einstein Medical Center*, 313 Pa.Super. 492, 460 A.2d 295 (1983). This is alternatively described as the time

when the cause of action has "accrued." The discovery rule is a judicially created tenet of statutory construction applicable to statutes of limitations which operates to toll the running of a statute where the existence of a cause of action cannot reasonably be ascertained within the prescribed time. *Id.; Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959). The now generally accepted formulation of the discovery rule provides that the discovery rule prevents the statute of limitations from running against the plaintiff until the plaintiff knows or reasonably should know (1) that he or she has been injured, and (2) that this injury has been caused by another party's conduct. *Larthey v. Bland,* 367 Pa.Super. 67, 532 A.2d 456, 459 (1987); *Cathcart v. Keene Industrial Insulation,* 324 Pa.Super. 123, 135–6, 471 A.2d 493, 500 (1984). The rule arises from the inability of the plaintiff, despite the exercise of due diligence, to know of his injury or its cause. *Pocono International Raceway, Inc. v. Pocono Produce, Inc.,* 503 Pa. 80, 86, 468 A.2d 468, 471 (1983).

■ Since the discovery rule is a tenet of statutory construction, whether it can be applied depends in the first instance on the language of the statute of limitations being construed. If the statute of limitations in question does not either expressly or impliedly prohibit application of the discovery rule, then courts are free to employ it. *Pastierik v. Duquesne Light Co.,* 514 Pa. 517, 526 A.2d 323 (1987); *Anthony v. Koppers Co., Inc.,* 496 Pa. 119, 436 A.2d 181 (1981). Where the statute requires that an action must be filed within a specified period of time after a "definitely established event," the discovery rule cannot be read into the statute because the statute "leaves no room for construction." *Pastierik,* 514 Pa. at 520, 526 A.2d at 325. The *Pastierik* Court decided that the wrongful death statute of limitations could not be extended by the discovery rule because the statute provided that the action must be brought within two years of the death, a definitely established event.

■ Unlike the wrongful death statute, and akin to that applicable to negligence actions, the battery statute of limitations quoted above does not fix a definite event as the beginning of the limitations period. It merely provides that an action for battery must be brought within two years of when a cause of action for battery accrues. 42 Pa.Cons. Stat.Ann. §§ 5524(1) & 5502(a). As the *Pastierik* Court stated, "[s]tatutory references to the occurrence of an 'injury' or the accrual of a 'cause of action' are subject to judicial interpretation as to the degree of knowledge a plaintiff must possess before the statute will start to run." *Pastierik*, 514 Pa. at 520, 526 A.2d at 325 (quoting *Anthony v. Koppers*, 496 Pa. at 124, 436 A.2d at 184).[2] In other words, the courts are free to construe when a cause of action for battery accrues for purposes of the commencement of the limitations period in light of what the plaintiff knew or should have known regarding his or her injuries and their cause because the accrual of the cause of action is not fixed as one definitively established event and the existence of the cause of action may not be reasonably ascertainable within the limitations period.

This principle is but a restatement of what the Supreme Court had previously explained in the seminal case of *Ayers v. Morgan*. There the Court held that where a statute of limitations provides that the limitations period is to begin to run when an "injury" is done, the court is free to interpret this reasonably to mean "when the act heralding a possible tort inflicts a damage which is physically objective and ascertainable." *Id.* 397 Pa. at 290, 154 A.2d at 792. The statute does not run until the plaintiff did or reasonably could have ascertained his or her injury. Likewise, as the above-quoted portion of the *Pastierik* opinion states, where the statute of limitations provides that the limitations period begins to run when the "cause of action accrues" and does

2. The discovery rule is unquestionably not limited to negligence actions. The seminal Pennsylvania case applying the rule was a trespass to land and conversion action. *Lewey v. Fricke Coke Company*, 166 Pa. 536, 31 A. 261 (1895). The rule has also been applied to breach of contract actions involving latent defects. *A.J. Aberman, Inc. v. Funk Building Corp.*, 278 Pa.Super. 385, 420 A.2d 594 (1980).

not fix this as occurring upon the happening of a definitively established event, courts are free to interpret the statutory language in light of what the plaintiff knew or reasonably should have known.

■ In the context of an informed consent battery action, the plaintiff's cause of action does not accrue until the "touching", i.e., "the act heralding a possible tort," *Ayers, supra,* "inflicts a damage which is physically objective and ascertainable." *Id.* Although, as the trial court in the instant case stated, all of the elements of a battery may well have been accomplished at the time of the touching by the physician, that does not lead to the conclusion that the plaintiff-patient's cause of action has then accrued for purposes of the statute of limitations. As traditionally stated, the elements of the tort of battery are "a harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff or a third person to suffer such a contact, or apprehension that such a contact is imminent." Prosser and Keeton, *Law of Torts,* at 39 (5th ed.1984). The final element of the tort, obviously of crucial importance to an informed consent battery, is that the touching is done without the plaintiff's consent.[3]

■ Although in a typical battery action, all of these elements will ordinarily be present and ascertainable to plaintiff at the time of the touching itself, that is not the

---

**3.** Prosser has explained the role of consent in battery actions as follows:

The subject of what is sometimes referred to as informed choice in the law of torts is one of the most complex and difficult in the entire area of the law. The problem discussed here is the meaning and effect of consent in relation to intentional interference with person or property.

Consent ordinarily bars recovery for intentional interferences with person or property. It is not, strictly speaking, a privilege, or even a defense, but goes to negative the existence of any tort in the first instance.... As to intentional invasions of the plaintiff's interests, his consent negatives the wrongful element of the defendant's act, and prevents the existence of a tort. "The absence of lawful consent," said Mr. Justice Holmes, "is part of the definition of assault." *Id.* at 112 (citing *Ford v. Ford,* 143 Mass. 577, 578, 10 N.E. 474, 475 (1887)) (footnotes omitted).

case in an informed consent battery action. Such a plaintiff ordinarily will or should know that he or she has been touched and that the defendant's action was intended to cause the touching.[4] Importantly, however, the plaintiff may well not know that the touching was harmful and non-consensual. The harmful and non-consensual nature of the touching is completely dependent on the touching resulting in an injury that the plaintiff is reasonably able to ascertain and the possibility of which was not conveyed to the plaintiff prior to surgery. Until this injury manifests itself, the touching, which is "the act heralding a possible tort", has not yet resulted in "a damage which is physically objective and ascertainable". Since, under the *Cathcart* formulation of the discovery rule, the statute of limitations does not begin to run until the plaintiff has or reasonably could have discovered both the injury and that it was caused by the act of a third party, the statute of limitations applicable to a lack of informed consent action cannot begin to run until plaintiff did or reasonably could have discovered that the medical procedure performed has caused an injury of which the plaintiff was not warned.

This is indeed the case in the matter before us. Although Mrs. Levenson knew as of January 12, 1981 that she had been intentionally touched by Dr. Souser, she did not know and could not have known until sometime there-

---

**4.** In some situations, the plaintiff may well not even know or have the ability to discover the precise nature of the touching itself. For example, in a very recent decision of this court, *Corbett v. Weisband,* 380 Pa.Super. 292, 551 A.2d 1059 (1988), plaintiff sued on a lack of informed consent theory alleging that her doctor had performed a procedure on her knee that she had not authorized. She also alleged that she did not and could not have known that the procedure was performed until two years thereafter. If the statute of limitations were deemed to have begun to run as of the date of the touching, plaintiff's informed consent action would have been barred. The court determined that the jury had properly determined that plaintiff's action was not barred since there was evidence of record to support the conclusion that plaintiff did not know and reasonably could not have known that the procedure had been performed until long after the procedure itself. Thus, what the plaintiff knew or should have known concerning the touching was deemed relevant to when the statute of limitations began to run.

after, i.e. at least by April or May 1981, that the touching was harmful and non-consensual because it had resulted in the complication of capsulization, of which she had allegedly not been told. This complication results from the formation of scar tissue, which necessarily takes time. It is the knowledge of this injury that began the running of the statute of limitations against Mrs. Levenson. Since it had not appeared in a manner reasonably ascertainable to Mrs. Levenson at the time of the touching, the date of the touching cannot possibly be the date when the cause of action accrued and the limitations period began. However, since it is clear from Mrs. Levenson's own testimony, as summarized above, that she actually knew by the latest April or May 1981 that she was experiencing a complication the possibility of which had not been conveyed to her, her cause of action accrued at the latest as of April or May 1981. Since she did not commence suit until June 1983, her action for lack of informed consent to the first surgery is barred.

We cannot fix the commencement of the limitations period as of the date when Mrs. Levenson was first informed by Dr. Ardizone that the complication she was experiencing was a common occurrence and one that all breast augmentation patients should be warned of prior to surgery. This knowledge was important only insofar as it buttressed the conclusion that the risk of capsulization was material enough to a decision to undergo breast augmentation that it should have been conveyed to Mrs. Levenson pre-operatively. It was not relevant to the *facts* that she reasonably had to be able to discover before her cause of action would accrue, i.e. the fact that she had an injury the possibility of which had not been conveyed to her and the fact that the cause of her injury was the act of Dr. Souser. These are the only things Mrs. Levenson needs to have been able to discover through the exercise of reasonable diligence before the statute of limitations would begin to run against her. *DeMartino v. Albert Einstein Medical Center*, 313 Pa.Super. 492, 460 A.2d 295 (1983) (statute will not

be tolled until plaintiff knows of legal theory to be pursued). The two year period given by the statute is the time in which a plaintiff is expected to exercise due diligence in seeking the medical and legal advice necessary to ascertain if an action should be brought and, if so, what legal form it will take. This, in fact, is what the limitations period was created to provide. *Id.*, 313 Pa.Superior Ct. at 498–503, 460 A.2d at 298–300.

We also cannot grant Mrs. Levenson relief from the statute of limitations on the ground that Dr. Souser engaged in fraud or concealment of facts material to Mrs. Levenson's condition or its cause. The Supreme Court has recently explained the "governing principles" relevant to such a claim as follows:

Where, "through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry," the defendant is estopped from invoking the bar of the statute of limitations. *Schaffer v. Larzelere*, 410 Pa. 402, 405, 189 A.2d 267, 269 (1963). Moreover, defendant's conduct need not rise to fraud or concealment in the strictest sense, that is, with an intent to deceive; unintentional fraud or concealment is sufficient. *Walters v. Ditzler*, 424 Pa. 445, 227 A.2d 833 (1967); *Nesbitt v. Erie Coach Company*, 416 Pa. 89, 204 A.2d 473 (1964). Mere mistake, misunderstanding or lack of knowledge is insufficient however, *Schaffer v. Larzelere, supra;* and the burden of proving such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party. *Nesbitt v. Erie Coach Company, supra.*

*Molineaux v. Reed*, 516 Pa. 398, 402–403, 532 A.2d 792, 794 (1987).

The only evidence Mrs. Levenson offered in connection with her fraud or concealment claim consisted of certain alleged representations by Dr. Souser following surgery to the effect that Mrs. Levenson's condition could well be part of the normal healing process to be alleviated by normal massage techniques and Mrs. Levenson's own continuing confidence in Dr. Souser and unwillingness to

question the doctor's actions until the second surgery had been performed. Mrs. Levenson also asserts that it was not until after the second surgery, when capsulization again occurred, that Mrs. Levenson knew she had "an actual severe and lasting injury."

This is clearly insufficient to show, by "evidence which is clear, precise and convincing," that Dr. Souser concealed the true nature of Mrs. Levenson's injury from her until after the second surgery in a manner that justifies tolling the statute. First, Mrs. Levenson's confidence in her doctor does not completely remove her responsibility to be diligent concerning her own medical treatment. Although we have previously recognized that a patient's confidence in his or her doctor may well lull the patient into a false sense of security, we have also stated that the statute of limitations will not be tolled where the patient's own common sense should put him or her on notice of the injury. *DeMartino,* 313 Pa.Super. at 503–7, 460 A.2d at 301–2. In Mrs. Levenson's own testimony she admitted that at the latest by May 1981 she knew she had a complication, she knew something had gone terribly wrong and she even suspected that she had not been told everything she needed to know concerning possible complications before she had surgery. Indeed, if she did not know, we would nevertheless hold that she should have known. She was experiencing pain, normal massage techniques had failed, extraordinary measures like an attempt to pop the scar tissue from the exterior had failed, and Dr. Souser told her that further surgery was required. What else need a diligent patient know to suspect that an injury has occurred at the hands of her doctor?

■ Moreover, a plaintiff clearly need not know the precise extent of her injuries before the statute will run. *Ayers. v. Morgan, supra.* At most Dr. Souser's representations immediately after surgery can be construed as reassuring Mrs. Levenson that her injury was not so severe as to be irremediable. They cannot reasonably be construed to convince a reasonable patient into believing until June 1981 that there was no injury at all.

■ The order of the trial is affirmed insofar as it bars recovery for injuries sustained as a result of the January 12, 1981 surgery.[5]

WIEAND, J., files concurring statement.

TAMILIA, J., files concurring and dissenting opinion.

BROSKY, J., files dissenting opinion in which CIRILLO, President Judge, joins.

WIEAND, Judge, concurring:

I agree with Judge Tamilia that it is unnecessary in this appeal to determine whether the discovery rule applies to an action based on an alleged lack of informed consent. It was more than two years before the commencement of this action that appellant underwent surgery and became aware of the complications which she alleges had not been fully explained to her. The action for such complications, therefore, is time barred. I concur in the decision to affirm the order of the trial court which barred recovery for injuries resulting from the surgery of January 12, 1981.

TAMILIA, Judge, concurring and dissenting:

I disagree with the majority in that it reaches the right result but introduces an inappropriate reason. As the ma-

5. Appellant argues that the trial court's order must be reversed even if we find that Mrs. Levenson's suit for damages resulting from the first surgery is barred because the order appears to bar even the submission of evidence relating to events prior to June 2, 1981 in the trial of Mrs. Levenson's action for damages resulting from the second surgery performed on June 5, 1981. The order states that defendant's motion for summary judgment is granted "insofar as any reference to the surgery of January 12, 1981, and any other procedure prior to June 2, 1981, as well as reference to any injuries which may have resulted therefrom." This language does suggest that the impact of the court's order is to prevent Mrs. Levenson from presenting evidence of events prior to the second surgery in her action for damages allegedly resulting from it. To the extent the order so implies, it is clearly incorrect. On remand, the court is instructed to permit Mrs. Levenson to present such competent and otherwise admissible evidence as is necessary to prove her claim relating to the second surgery. To do otherwise would be to bar Mrs. Levenson's action completely when in fact her suit for damages relating to the second surgery was timely filed.

jority quotes *Pastierik v. Duquesne Light Co.*, 514 Pa. 517, 526 A.2d 323 (1987), "Where the statute requires that an action must be filed within a specific period of time after a "definitely established event," the discovery rule cannot be read into the statute because the statute "leaves no room for contraction." *Id.*, 514 Pa. at 521, 526 A.2d at 325 (Majority Opinion, p. 144). Distinguishing this case from *Pastierik,* the majority goes on to say:

> Unlike the wrongful death statute, and akin to that applicable to negligence actions, the battery statute of limitations quoted above does not fix a definite event as the beginning of the limitations period. It merely provides that an action for battery must be brought within two years of when a cause of action for battery accrues. 42 Pa.Cons.Stat.Ann. §§ 5524(1) and 5502(a).

Beck, J., p. 1087. Where the majority errs is determining that a "battery", like other forms of negligence, can have a variable time of occurrence of an injury or the accrual of a cause of action as determined by the time a person became aware of the injury. The trial court correctly determined that battery as a tort occurs at the time the patient is touched, leaving no room for statutory construction as to when the injury occurred. It is immaterial that the statute of limitations as to battery does not delineate the point of touching when, by definition, "battery" allows for no other interpretation. Thus the definition of battery and the statute of limitations as read together proscribe the application of the discovery rule to extend the statute of limitations. The majority acknowledges this Court cannot redefine battery so as to make it akin to negligence in this context but because the statute of limitations does not fix the time of a battery, as death is fixed as an established event, it would hold the discovery rule can apply.

*Black's Law Dictionary* defines such a battery as a "technical battery". A technical battery occurs when a physician or dentist, in the course of treatment, exceeds the consent given by a patient. Although no wrongful intent is present, and in fact there may be a sincere purpose to aid

the patient, recovery is permitted unless there is an emergency. *Prosser*, as quoted by the majority, quotes *Holmes* as saying the absence of lawful consent is part of the definition of assault. *Prosser and Keeton on Torts*, p. 111, (5th ed.1984). Unquestionably, consent does not apply where the doctor in a surgical proceeding exceeded the consent given, as in the case cited in the majority, footnote 4, *Corbett v. Wiesband*, 380 Pa.Super. 292, 551 A.2d 1059 (1988), where consent was not given for performance of an arthrodesis or knee fusion procedure on the plaintiff's left knee, and which she did not discover until two years later. To carry the doctrine of informed consent beyond the battery, to include lesser negligence and acts or results from the initial battery goes beyond what was intended by the discovery rule. In analysis of informed consent in surgical procedures. *Prosser* states:

> Where there is active misrepresentation, this has been held to invalidate the consent, so that there is battery; and the same has been held where there has been mere nondisclosure of consequences which the surgeon knew to be certain to follow. *Beyond this, there have been few decisions finding battery where there was failure to disclose only a known risk of treatment.*
>
> The greater number of decisions now regard the failure to disclose the mere risk of treatment as involving a collateral matter, and negligence rather than intent, and so have treated the question as one of negligent malpractice only, which brings into question professional standards of conduct. The matter is, therefore, more fully considered in connection with negligence [rather than battery or informed consent].

*Prosser, supra* at 120–121 (footnotes omitted).

The fact that capsulization occurs in some cases of breast augmentation surgery, but not all, and that there are routine procedures such as massage and "closed capsulotomy" to deal with build up of scar tissue as a normal incident of the surgery, places this case in the category of a known

risk of treatment rather than one certain to follow. This problem is so widely discussed and detailed on talk shows and in women's magazines that it is inconceivable that it is not part of the general knowledge in the female community. The treatment of this issue by the majority, even though it does not change the result, by applying the discovery rule to the battery at the point where she learned from other medical sources of the possibility of other surgery, which the majority places at May 1981, would open the door to expansion of the discovery rule to battery cases involving lack of informed consent as to collateral matters. This, I believe, is inappropriate as it lies properly within the area of negligence and standards of professional conduct governed by the principles of a typical malpractice case. The application of the discovery rule is totally unnecessary to the resolution of this case and should not be a consideration in the ultimate result.

BROSKY, Judge, dissenting:

I agree with the majority's reasoning with regard to its application of the Discovery Rule to an Informed Consent action despite its characterization as a battery. I also am in agreement with the majority's suggestion that perhaps the time has come for Informed Consent Cases to be reclassified to reflect their true nature.

My disagreement, however, arises over the majority's affirmance of the trial court's grant of partial summary judgment. According to the majority, there was no need for the jury to decide when appellant should reasonably have known that she had a cause of action, i.e., that she had been injured and that the injury was caused by another party's conduct. *Larthey v. Bland,* 367 Pa.Super. 67, 532 A.2d 456 (1987). However, our Court has previously stated that:

[O]rdinarily most questions relating to the applicability of the defense of the statute of limitations are questions of

fact to be determined by the jury. 2 Standard Pennsylvania Practice 289. Specifically, the question of whether a plaintiff has exercised due diligence in discovering the incidence of his injury is usually a jury question. *Irrera v. Southeastern Pennsyvlania Transportation Authority*, 231 Pa.Super. 508, 331 A.2d 705 (1974); *Carney v. Barnett*, 278 F.Supp. 572 (E.D.Pa.1967). "Whether the statute has run on a claim is usually a question of law for the judge, but where, as here, the issue involves a factual determination, i.e. what is a reasonable period, the determination is for the jury." *Smith v. Bell Telephone Company of Pennsylvania*, 397 Pa. 134, 142, 153 A.2d 477, 479 (1959).

*Taylor v. Tukanowicz*, 290 Pa.Super. 581, 586, 435 A.2d 181, 183 (1981).

Appellant here is not claiming merely that she suffered physical harm; a fact which could have been discovered soon after her "complications" began. But, rather, she is challenging the sufficiency of the information given to her by appellee prior to her agreeing to surgery. Thus, she would have had to realize that the possibility of her physical harm was something to which she should have been alerted. This is something which may not have been discoverable until consulting with another physician who would explain to appellant whether her complications were something about which she could have been warned, or whether they were sufficiently rare that such warning was not warranted.

Accordingly, I would reverse the trial court's grant of a partial summary judgment and remand for a jury determination as to when appellant should have discovered the alleged insufficiency of the pre-operative information given by appellee.

CIRILLO, President Judge, joins this dissenting opinion.