IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eugene Capaldi,                                  :
                          Petitioner             :
                                                 :
              v.                                 :    No. 787 C.D. 2016
                                                 :    Submitted: October 14, 2016
Workers' Compensation Appeal                     :
Board (City of Philadelphia),                    :
                          Respondent             :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge

OPINION
BY PRESIDENT JUDGE LEAVITT                              FILED: January 9, 2017

      Eugene Capaldi (Claimant) petitions for review of an adjudication of
the Workers' Compensation Appeal Board (Board) denying him compensation
benefits for a squamous cell carcinoma on his right vocal cord. In doing so, the
Board affirmed the decision of the Workers' Compensation Judge (WCJ) and held
that Claimant, a retired firefighter, did not prove that his cancer is a type caused by
exposure to International Agency for Research on Cancer (IARC) Group 1
carcinogens and, thus, an occupational disease under Section 108(r) of the
Workers' Compensation Act (Act).[1] The Board also held that Claimant could not
use the statutory presumption in Section 301(f) of the Act[2] that assists a firefighter

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of December 6, 1972, P.L. 930, 77 P.S. §27.1(r). Section 301(c)(2) of the Act, 77 P.S. §411(2), provides that the term "injury" as used in the Act shall include an "occupational disease" as defined in Section 108 of the Act. The Act of July 27, 2011, P.L. 251, commonly known as Act 46, amended Section 108 to include: "(r) Cancer suffered by a firefighter which is caused by exposure to a known carcinogen which is recognized as a Group 1 carcinogen by the International Agency for Research on Cancer." 77 P.S. §27.1(r).

[2] Added by the Act of July 7, 2011, P.L. 251, 77 P.S. §414.

in proving that his occupational disease is compensable because he filed his claim petition more than 300 weeks after his last day of work as a firefighter. Finally, the Board agreed with the WCJ that Claimant did not prove that his cancer was caused by his employment. We affirm.

## Background

The City of Philadelphia (Employer) hired Claimant as a firefighter in 1969. Claimant retired in October 2003 after 34 years of service. In May 2005, Claimant was diagnosed with squamous cell carcinoma of the right vocal cord, which was successfully treated with surgery. Seven years later, in December 2012, Claimant filed a claim petition alleging that his cancer was caused by his workplace exposure to carcinogens. Claimant sought payment of his medical bills. Employer filed an answer denying the allegations. At the hearing before the WCJ, both Claimant and Employer presented evidence.

Claimant testified by deposition. He explained that he had worked at numerous fire stations in Philadelphia where he was exposed to diesel fuel emissions because the fire trucks were routinely kept idling inside the buildings. Also, Claimant testified about the carcinogens in the smoke and burning debris, including asbestos and fuel, to which he was exposed while fighting fires. During his service as a firefighter, Claimant did not always wear a self-contained breathing apparatus (SCBA). After fighting a fire, it was not unusual for him to have soot all over his face, in his nostrils, and on his clothes.

In May 2005, approximately 18 months after his retirement, Claimant was diagnosed with squamous cell carcinoma of the right vocal cord. Claimant had not been previously diagnosed with any type of cancer, and he did not have a family history of cancer. Claimant, once a smoker, stopped smoking in 1979.

2

Since that time, he has not used any form of tobacco product. Claimant acknowledged that he consumes alcohol moderately, usually wine with dinner four or five times a week.

Claimant submitted a report from Virginia M. Weaver, M.D., M.P.H., who has studied the occupational diseases of firefighters. Dr. Weaver found that the smoke to which firefighters are exposed contains the following IARC Group 1 carcinogens: arsenic; asbestos; benzene; benzo[a]pyrene; 1, 3-butadiene; formaldehyde; and soot. These carcinogens enter the body through inhalation, skin absorption, and ingestion of contaminated nasopharyngeal secretions. Further, recent studies from the National Institute for Occupational Safety and Health (NIOSH) and National Cancer Institute have shown that diesel exhaust is carcinogenic. Dr. Weaver opined that firefighters are exposed to IARC Group 1 carcinogens in the course of their work, but she did not specify the types of cancer that can be caused by Group 1 carcinogens.

Claimant also offered the deposition testimony of Barry L. Singer, M.D., a physician, who is board certified in internal medicine, hematology, and medical oncology. Dr. Singer, who has treated cancer patients for more than 40 years, focuses on breast, colon, and lung cancers. Dr. Singer is not an epidemiologist or toxicologist, and he does not specialize in the etiology of cancer.

Dr. Singer stated that, in 2008, he was contacted by Claimant's counsel to evaluate the cancer history of a number of firefighters to determine whether their cancer was work-related and, thus, compensable under the Act. Dr. Singer estimated that since 2008 he has reviewed 40 to 50 cases on referral from Claimant's counsel.

With each referral, Claimant's counsel sends Dr. Singer the firefighter's medical history and an affidavit from the firefighter about his job duties, length of service, and family medical history. Claimant's counsel also sends Dr. Singer articles from the medical literature relevant to firefighting and cancer. Dr. Singer evaluates these materials and prepares a report; he does so without doing a physical examination of the firefighter in question. This process was followed in the case of Dr. Singer's report on Claimant's squamous cell carcinoma.

In his report, Dr. Singer stated that Claimant was exposed to IARC Group 1 carcinogens commonly found in smoke, *i.e.*, arsenic; asbestos; benzene; benzo(a)pyrene; 1, 3-butadiene; formaldehyde; and soot. The report stated that diesel engine exhaust has been labeled by the IARC as a Group 1 carcinogen and that smoke contains IARC Group 2A carcinogens, *i.e.*, polychlorinated biphenyls, polycyclic aromatic hydrocarbons and styrene. The report identified three studies that relate pharyngeal cancer and firefighting:

> 1. LeMasters, Grace, et al, "Cancer Risk Among Firefighters: A review and Meta-analysis of 32 Studies".
>
> 2. Fire Engineering, "A Cohort Mortality Study of Philadelphia Firefighters".
>
> 3. Samet, Jonathan, M.D., et al, "An Occupational Health Investigation of Cancer Among Fire Fighters in Anne Arundel County, Maryland".

Reproduced Record at R29 (R.R. __). After reviewing the above studies, Dr. Singer's report opined that Claimant's exposure to Group 1 and Group 2A carcinogens while working for Employer was "a substantial contributing factor in the cause of his laryngeal cancer." *Id.*

At his deposition, Dr. Singer testified that he uses a "differential diagnosis" methodology[3] to assess the cause of a firefighter's cancer. Notes of Testimony (N.T.), 12/21/2012, at 46. Practitioners use this methodology to assess the history and symptoms of their patients. Dr. Singer acknowledged the absence of scientific authority for the use of this methodology to determine a causal connection between a given agent and a given cancer.

Further, Dr. Singer explained that his use of the words "substantial contributing factor" in his reports meant that if that factor did not exist, more likely than not the firefighter would not have developed the disease when he did. N.T., 12/21/2012, at 56. Stated otherwise, the exposure explained the timing of the disease's onset.

On cross-examination, Dr. Singer acknowledged that he had not considered the methodologies used by public health experts to determine what exposures cause cancer, including studies published by the Environmental Protection Agency, Veteran's Administration, the National Academy of Science and the IARC. Nor did Dr. Singer consider the American Medical Association's Guides to the Evaluation of Disease and Injury Causation, the Federal Court

---

[3] Dr. Singer described the differential diagnosis methodology as follows:

> A differential diagnosis is what we use to list all of the possibilities in terms of diagnosis that a patient can have in terms of diseases, causes of the disease. And essentially we knock off causes or conditions that we don't believe are by ruling them out and eventually come down to what we consider a final diagnosis and most probably diagnosis.

Notes of Testimony, 12/21/2012, at 46.

5

handbook or the Bradford Hill criteria.[4]  Dr. Singer did not do his own analysis of studies reported in the literature or do any lab testing.

In a letter dated March 12, 2014, Dr. Singer addressed the report of Employer's expert, Dr. William M. Keane, M.D., who opined that Claimant's past smoking and alcohol consumption was the probable cause of his cancer and that a causal connection between laryngeal cancer and firefighting has not been established.  Relying upon the National Cancer Institute's finding that cessation of smoking for 30 years reduces a cancer risk by 90%, Dr. Singer opined that Claimant's smoking history was not a substantial contributing factor in the cause of his laryngeal cancer since he had quit 28 years before his cancer developed. Further, Claimant did not have a history of heavy alcohol consumption.

In opposition to Claimant's claim petition, Employer submitted the deposition testimony of Dr. Tee Lamont Guidotti, M.D., M.P.H., who is board certified in internal medicine, pulmonary medicine, occupational medicine, and has a nonmedical diploma in toxicology.[5]  Dr. Guidotti is also trained in epidemiology, which he described as the "science of the patterns of diseases in populations." N.T., 1/21/2013, at 11.  Dr. Guidotti has undertaken a number of research projects that have been published in peer-reviewed journals.  For the past 20 years, Dr. Guidotti has been investigating the relationship between the toxin exposures associated with firefighting and cancer.  Dr. Guidotti has testified as an expert on

---

[4] Following his December 2012 deposition, Dr. Singer reviewed the American Medical Association's Evaluation of Disease and Injury Causation and testified that his methodology followed the AMA's causation analysis.

[5] Dr. Guidotti explained that toxicology is the science of studying how chemicals affect the body and how the body responds to those chemicals.

the etiology of various diseases related to occupations, specifically prostate cancer, and on methodology.

Dr. Guidotti criticized Dr. Singer's reports and deposition testimony in the firefighter cases for a lack of methodology. He explained:

> In all of the statements from Dr. Singer that I saw, I could not really discern that any methodology was, in fact, used. They were all essentially identical.
>
> The language was almost rubber-stamped. The conclusions were identical. There was no weighing of evidence or discussion of individual studies. There was no discussion of alternative explanations or potential exposures to rule them out or rule them in in any particular case.
>
> It was like they were Xerox'd and only the names were changed.

N.T., 1/21/2013, at 21-22. According to Dr. Guidotti, the reports offered "no evidence that a methodology was, in fact, followed, let alone described." *Id.* at 49.

Dr. Guidotti testified that Dr. Singer's approach to causation did not follow the generally accepted standards of practice in the field, and it did not conform to generally accepted scientific principles. Dr. Guidotti stated:

> Q.   Doctor, do you have an opinion within a reasonable degree of medical certainty as to whether Dr. Singer selected and appropriately applied generally accepted scientific methodologies for the purpose of offering an opinion on etiology of cancer at a general causation level?
>
> A.   Based on the evidence and the opinions that he wrote and in his deposition and everything else I have seen, my opinion is that it does not conform to the usual standard.

N.T., 1/21/2013, at 73. Dr. Guidotti observed that because Dr. Singer never heard of the Bradford Hill criteria, this suggested that he was "not familiar with

7

mainstream epidemiology methodology."[6] *Id.* at 33. Dr. Guidotti also observed that what knowledge of etiology Dr. Singer has was "probably derived from his experience as an oncologist, which is all treatment-oriented." *Id.*

When asked about Dr. Singer's review of the epidemiological literature, Dr. Guidotti responded:

> Q. Dr. Singer testified that he can draw some inferences from the number of studies for a proposition and the number of studies against a proposition.
>
> Specifically, when asked about prostate cancer as an example, he said there were 16 or 17 articles for an association and two against, therefore he could [con]clude that there was an association.
>
> Is that an appropriate methodology for an expert to use in determining the strengths and weaknesses of epidemiological studies?
>
> A. No. And I'm speechless that in this day and age somebody would think it is.

N.T., 1/21/2013, at 26. Dr. Guidotti explained that when reviewing epidemiological literature, one needs to analyze the quality of the studies, including their statistical work, which Dr. Singer testified he did not do. Simply counting the articles "for" and those "against" a connection between a particular agent and cancer is a meaningless observation. *Id.*

Employer also offered a report from Dr. Keane, who is board certified and the Chairman of the Department of Otolaryngology-Head and Neck Surgery at Thomas Jefferson University. He has treated hundreds of patients with carcinoma

---

[6] Dr. Guidotti testified that essentially everybody in epidemiologic research uses the Bradford Hill criteria. N.T., 1/21/2013, at 32.

of the larynx. Dr. Keane's report indicated that "the most common risk factors for squamous cell carcinoma are those of smoking and alcohol consumption." Certified Record, Employer's Exhibit 1, at 2. Dr. Keane opined that Claimant's history of smoking one pack a day for 21 years was linked to his laryngeal cancer, even though he had stopped smoking 28 years before his cancer diagnosis. Further, Dr. Keane stated that "[a]lcohol consumption is recognized as a co-carcinogen in the face of nicotine use in cancers of the larynx." *Id.*

Dr. Keane disagreed with Dr. Singer's opinion that Claimant's cancer was causally related to his exposure as a firefighter, explaining:

> The biopsies obtained from [Claimant's] larynx do not demonstrate evidence of asbestos as a causative agent and his chest x-rays do not demonstrate any evidence of asbestos exposure.

Certified Record, Employer's Exhibit 1, at 3. Further, Dr. Keane reviewed the epidemiological studies regarding firefighters and laryngeal cancer, observing that "there are diverging findings among the existing literature for cancers of the buccal cavity, pharynx and larynx." *Id.* He noted that, in many of the studies, there was a lack of control for tobacco use. Dr. Keane explained that, "[a]s a whole, there is no epidemiologic evidence that there is an increased risk for the development of laryngeal cancer among firefighters." *Id.* at 4. Dr. Keane opined that Claimant's "employment as a firefighter was not the direct cause or substantial contributing factor in the development of his carcinoma of the larynx[;]" rather, his "smoking history coupled with his history of alcohol consumption, remains the most substantial contributing factor in his development of cancer of the larynx." *Id.*

9

**Decision on Claim Petition**

The WCJ credited the testimony of Claimant on his work history and exposure to Group 1 carcinogens during his career as a firefighter.[7]  The WCJ rejected Dr. Singer's testimony that this exposure caused his type of cancer, explaining:

a.  Dr. Singer was unfamiliar with the Bradford Hill criteria used in epidemiological research to determine a cause-and-effect relationship between a particular agent and the development of a disease, as explained by Dr. Guidotti.

b.  Dr. Singer agreed that every fire was different and there was no way to know when and how much exposure a firefighter had to a Group I carcinogen.

c.  Dr. Singer agreed that, because he is not an epidemiologist, he was not able to assess reliability based on study design.

d.  Dr. Singer did not know the methodologies used to attempt to link a given exposure to a given cancer by the EPA, the Veterans Administration, the IARC, the National Academy of Sciences, the American Medical Association, and the federal courts.

e.  While he later reviewed the methodology for providing an opinion per the American Medical Association's Guides to the Evaluation of Causation, and indicated that his methodology followed the steps set forth in Table 3-2, he acknowledged that he was unaware of the existence of this Guide prior to the December 21, 2012 deposition.

---

[7] The WCJ has responsibility for questions of credibility, conflicting medical evidence and evidentiary weight. *Sherrod v. Workmen's Compensation Appeal Board (Thoroughgood, Inc.)*, 666 A.2d 383, 385 (Pa. Cmwlth. 1995).

WCJ Decision at 14; Finding of Fact No. 15. Instead, the WCJ credited the testimony of Drs. Guidotti and Keane on causation, making the following findings of fact:

a.  Dr. Guidotti is an expert in the field of epidemiology.

b.  He taught courses in toxicology and epidemiology and performed research studies that have been published in peer-reviewed journals.

c.  He has investigated potential relationships between firefighting exposures and cancer, testified before government agencies on this issue and consulted for various firefighter organizations.

d.  Dr. Guidotti credibly explained that elevated risks among firefighters might also be explained by other factors such as detection bias, geography, genetics and lifestyle.

e.  Dr. Keane is exceedingly well-qualified in that he is a board certified specialist in head and neck surgery, with a special interest and expertise in head and neck cancer, as well as a professor and the chairman of the Department of Otolaryngology-Head and Neck Surgery at Thomas Jefferson University.

f.  Dr. Keane credibly explained that the most obvious contributors to Claimant's cancer are his past medical history of smoking and alcohol consumption.

WCJ Decision at 14; Finding of Fact No. 16.

The WCJ reached several legal conclusions. First, Claimant did not prove that he was unable to work as a result of his cancer; therefore, he was not entitled to use the presumption of causation set forth in Section 301(e) of the Act, 77 P.S. §413. Second, Claimant did not file his claim petition within 300 weeks of his last date of employment, which precluded his use of the presumption set forth in Section 301(f) of the Act, 77 P.S. §414. Third, Claimant, who had to prove that

11

his squamous cell carcinoma was an occupational disease without the assistance of a presumption, did not make his case. Accordingly, the WCJ denied the claim petition.

Claimant appealed to the Board, and it affirmed. It upheld the WCJ's factual findings. The Board agreed with the WCJ that Claimant was not entitled to use the statutory presumption under Sections 108(r) and 301(f) of the Act to prove that his cancer was work-related because he did not file his claim petition within 300 weeks of the last day of exposure to the carcinogen at work. Claimant retired on October 30, 2003, and he did not file his claim petition until December 14, 2012, which was 476 weeks after his last day of employment as a firefighter. Accordingly, Claimant did not satisfy the deadline for being able to use the presumption in Section 301(f) of the Act. The Board also agreed with the WCJ that Claimant bore the burden of proving all the elements necessary to prove that his cancer was an occupational disease, and he did not do so because the WCJ did not credit the testimony of Dr. Singer.

Claimant has petitioned for this Court's review of the Board's adjudication. On appeal,[8] Claimant raises two arguments. First, Claimant contends that the Board erred in construing the Act to require a firefighter seeking compensation for cancer pursuant to Section 108(r) of the Act to file his claim petition within 300 weeks of his last day of work. Second, Claimant argues that if Section 301(f) of the Act imposes a deadline for filing a claim petition for occupational disease, then the discovery rule should apply.

---

[8] This Court's review determines whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, and whether constitutional rights were violated or an error of law was committed. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown)*, 830 A.2d 649, 653 n.2 (Pa. Cmwlth. 2003).

**Analysis**

We begin with a review of the statutory provisions relevant to occupational disease. Section 301(c)(2) of the Act states that a compensable "injury" includes "occupational disease as defined in section 108 of this act." 77 P.S. §411(2). In turn, Section 108 of the Act lists a number of occupational diseases. In 2011, the General Assembly enacted what is referred to as Act 46,[9] which, *inter alia*, added cancer to the list of occupational diseases for firefighters. This addition is found in Section 108(r), and it states:

> Cancer suffered by a firefighter *which is caused by exposure to a known carcinogen* which is recognized as a Group 1 carcinogen by the International Agency for Research on Cancer.

77 P.S. §27.1(r) (emphasis added). Recently, in *City of Philadelphia Fire Department v. Workers' Compensation Appeal Board (Sladek)*, 144 A.3d 1011 (Pa. Cmwlth. 2016) (*en banc*), *petition for allowance of appeal filed* September 6, 2016, this Court considered the meaning of Section 108(r).

In *Sladek*, a firefighter with malignant melanoma sought compensation for his cancer pursuant to Section 108(r) of the Act. The Board had construed Section 108(r) to mean that a firefighter's cancer is always presumed work-related if the firefighter was exposed to a Group 1 carcinogen at work, regardless of whether the firefighter's cancer is a type of cancer "caused by exposure to a known carcinogen which is recognized as a Group 1 carcinogen." 77 P.S. §27.1(r). We rejected this construction of Section 108(r) of the Act because it gave no effect to "caused by." We held that Section 108(r) requires the firefighter

---

[9] Act of July 7, 2011, P.L. 251, No. 46.

13

to show that the Group 1 carcinogens, to which he was exposed, have been shown to cause the type of cancer suffered by the claimant.[10] *Sladek* also clarified that only after a firefighter establishes that his cancer is an occupational disease under Section 108(r) of the Act do the rebuttable presumptions in Sections 301(e) and (f) come into play.

Section 301(e) of the Act establishes a "presumption regarding occupational disease" that applies to any occupational disease sustained by any employee in any line of work. It states:

> *If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard*, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive.

77 P.S. §413 (emphasis added).[11] However, there is a special presumption where the occupational disease is cancer and the employee is a firefighter. Act 46 added Section 301(f) to the Act related to compensation for cancer suffered by a firefighter. It states as follows:

> *Compensation pursuant to cancer suffered by a firefighter shall only be to those firefighters who have served four or more years in continuous firefighting duties, who can establish direct exposure to a carcinogen referred to in section 108(r)* relating to cancer by a firefighter and have successfully passed a physical examination prior to asserting a claim under this subsection or prior to engaging in firefighting duties and the examination failed to reveal any evidence of the condition of

---

[10] In *Sladek*, the WCJ did not rule on whether the claimant's evidence showed that his cancer, melanoma, is a type of cancer caused by exposure to Group 1 carcinogens; accordingly, this Court remanded.

[11] Section 301(e) was added by the Act of October 17, 1972, P.L. 930, No. 223.

14

cancer. The presumption of this subsection may be rebutted by substantial competent evidence that shows that the firefighter's cancer was not caused by the occupation of firefighting. Any claim made by a member of a volunteer fire company shall be based on evidence of direct exposure to a carcinogen referred to in section 108(r) as documented by reports filed pursuant to the Pennsylvania Fire Information Reporting System and provided that the member's claim is based on direct exposure to a carcinogen referred to in section 108(r). Notwithstanding the limitation under subsection (c)(2) with respect to disability or death resulting from an occupational disease having to occur within three hundred weeks after the last date of employment in an occupation or industry to which a claimant was exposed to the hazards of disease, *claims filed pursuant to cancer suffered by the firefighter under section 108(r) may be made within six hundred weeks after the last date of employment in an occupation or industry to which a claimant was exposed to the hazards of disease. The presumption provided for under this subsection shall only apply to claims made within the first three hundred weeks.*

77 P.S. §414 (emphasis added).

Here, the Board construed Section 301(f) of the Act to require the firefighter to file a claim petition within 300 weeks of his last day of employment in order to take advantage of the statutory presumption that his cancer was work-related. The Board also observed that if a firefighter files a claim petition before 600 weeks have elapsed, then the firefighter may still prove that his cancer is an occupational disease.[12] However, he cannot take advantage of the presumption in Section 301(f) in making this demonstration.

------

[12] Section 301(a) of the Act makes the employer "liable for compensation for personal injury ... [incurred] in the course of his employment...." 77 P.S. §431. Section 301(c)(1) of the Act defines "injury" and "personal injury" to include "disease or infection." 77 P.S. §411(1). Section 301(c)(2) also provides as follows:

**(Footnote continued on the next page . . .)**

15

This Court also considered this issue in *Hutz v. Workers' Compensation Appeal Board (City of Philadelphia)*, 147 A.3d 35 (Pa. Cmwlth. 2016), *petition for allowance of appeal filed* October 3, 2016, and *Demchenko v. Workers' Compensation Appeal Board (City of Philadelphia)*, __ A.3d __ (Pa. Cmwlth., No. 2164 C.D. 2015, filed October 26, 2016), *petition for allowance of appeal filed* November 18, 2016. In *Hutz*, the claimant was diagnosed with prostate cancer in February 2006 while he was working for the City of Philadelphia as a firefighter. His treatment caused him to miss approximately three months of work. He retired from the City in January 2008. In April 2012, the claimant filed a claim petition, alleging that his prostate cancer resulted from his exposure to IARC Group 1 carcinogens. The Board held that because the claimant filed his claim petition 318 weeks after his last date of exposure, he could not take advantage of the presumption in Section 301(f) of the Act. Nevertheless, because the claimant did file within 600 weeks of his last day of work as a firefighter, his claim petition was not time-barred.

On the issue of timeliness, this Court stated as follows:

---

**(continued . . .)**

> The terms "injury," "personal injury," and "injury arising in the course of his employment," as used in this act, shall include, unless the context clearly requires otherwise, occupational disease as defined in section 108 of this act.

77 P.S. §411(2). Section 108 of the Act enumerates specific occupational diseases, and it includes a "catch-all" provision that encompasses:

> (n) All other diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are causally related to the industry or occupation, and (3) the incidence of which is substantially greater in that industry or occupation than in the general population.

77 P.S. §27.1(n). Where a claimant fails to make a case under Section 108(r) of the Act, he may show that it was an occupational disease under the catch-all provision in Section 108(n) of the Act.

16

The issue is not whether the statutory language places a limitation on the time to file a firefighter cancer claim; rather, the issue is whether the statutory language limits the time frame in which the presumption of compensability applies.

*Hutz*, 147 A.3d at 52. This Court further explained as follows:

> [The c]laimant filed his claim petition approximately 318 weeks after his radical prostatectomy in March 2006. *See* WCJ Op., F.F. No. 1i; Bd. Op. at 15. [The c]laimant's disability arising from prostate cancer arose in March 2006, and it extended for three months (approximately 12 weeks). After this period, [the c]laimant was not disabled by an occupational disease. Any exposure after his return to work in 2006 and before his retirement in 2008 could not be causally related to his prostate cancer, which was already cured by surgery and therapy before his return to work. Bd. Op. at 15, n.5. Therefore, the Board determined that the WCJ did not err in ruling [the c]laimant ineligible for Section 301(f)'s presumption of compensability. Bd. Op. at 15.
>
> As the Board noted, the pivotal question in this case is causation. Although [the c]laimant's cancer occurred in 2006, he filed his claim petition in 2012, outside of the 300-week period entitling him to the rebuttable presumption of compensability in Section 301(f) of the Act.

*Id.* at 52-53.

Next, we held that the timeliness of the claimant's claim petition was irrelevant even if the discovery rule were applicable.[13] This is because the presumption in Section 301(f) of the Act applies only where the firefighter has

---

[13] The discovery rule "is a judicially created tenet of statutory construction applicable to statutes of limitation[] which operates to toll the running of a statute where the existence of a cause of action cannot reasonably be ascertained within the prescribed time." *Levenson v. Souser*, 557 A.2d 1081, 1086 (Pa. Super. 1989) (citations omitted).

shown that his cancer is an occupational disease under Section 108(r) of the Act. We explained as follows:

> In any event, [the c]laimant failed to establish a causal relationship between his prostate cancer and his occupational exposure to a carcinogen recognized as a Group 1 carcinogen by the IARC. Thus, regardless of the date he filed his claim petition, the presumption of compensability in Section 301(f) of the Act is unavailable to [the c]laimant. *Sladek*. Therefore, any further discussion of whether the discovery rule applies to the 300-week filing limitation period for the application of the presumption of compensability is unnecessary in this case. As such, this issue is moot. *See Battiste v. Borough of E. McKeesport*, 94 A.3d 418 (Pa. Cmwlth. 2014)[].

*Id.* at 55.

Similarly, in *Demchenko*, the claimant, after retiring from his job as a firefighter paramedic with the City, was diagnosed with prostate cancer in June 2006. *Demchenko*, __ A.3d at __, Slip Op. at 3. In June 2012, the claimant filed a claim petition, alleging that his prostate cancer resulted from his exposure to IARC Group 1 carcinogens while working as a firefighter. The Board upheld the WCJ's finding that the claimant did not prove that prostate cancer was an occupational disease under Section 108(r) of the Act. The Board also agreed that the claimant was not entitled to use the statutory presumption in Section 301(f) of the Act because he filed his claim petition more than 300 weeks after his last date of exposure. The claimant appealed.

This Court affirmed. Because the claimant did not demonstrate that prostate cancer is an occupational disease for firefighters under Section 108(r) of the Act, the claimant could not use the presumption in Section 301(f) of the Act. The claimant could, nevertheless, pursue an occupational disease claim under Section 108(n) of the Act. However, the claimant's medical evidence failed to

prove that his particular cancer was caused by workplace exposures to any carcinogen, whether or not it has been identified as a "Group 1 carcinogen by the International Agency for Research on Cancer." 77 P.S. §27.1(r).

Here, as in *Hutz* and *Demchenko*, Claimant did not demonstrate that squamous cell carcinoma is an occupational disease for firefighters under Section 108(r) of the Act.[14] Accordingly, the presumption in Section 301(f) of the Act was unavailable to Claimant. Nevertheless, Claimant was able to pursue compensation for his cancer as "causally related to [his] industry or occupation" under Section 108(n) of the Act, 77 P.S. §27.1(n). This required Claimant to prove all elements to a claim petition, including a causal connection between his work and his cancer. Because Claimant's medical evidence was rejected, he did not prove that his squamous cell carcinoma was a work injury. The Board, accordingly, affirmed the WCJ.

## Conclusion

Claimant's medical evidence did not establish that squamous cell carcinoma is a type of cancer caused by Group 1 IARC carcinogens, and this was necessary in order to establish that his cancer is an occupational disease under Section 108(r) of the Act. As a result, the presumption of compensability in

---

[14] On appeal, Claimant does not challenge the credibility determinations of the WCJ. It is well-established the WCJ has sole authority over questions of credibility and evidentiary weight. *Watson v. Workers' Compensation Appeals Board (Special People in Northeast),* 949 A.2d 949 (Pa. Cmwlth. 2008). A WCJ may accept or reject the testimony of any witness, including a medical witness, in whole or in part. *Lombardo v. Workers' Compensation Appeal Board (Topps Co., Inc.),* 698 A.2d 1378 (Pa. Cmwlth. 1997). "Section 422(a) of the Act[, 77 P.S. §834,] does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations." *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Co.),* 893 A.2d 191, 195 (Pa. Cmwlth. 2005). "Unless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal." *Id.*

Section 301(f) of the Act was unavailable to Claimant. Claimant also had the opportunity to prove that his cancer was compensable pursuant to Section 108(n) of the Act, which is the predicate to taking advantage of the presumption set forth in section 301(e) of the Act. However, Claimant's medical evidence was rejected. In sum, Claimant did not meet his burden of proving that his cancer was a compensable occupational disease either under Section 108(n) or Section 108(r) of the Act.

For these reasons, we affirm the Board.

_____
MARY HANNAH LEAVITT, President Judge

20

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eugene Capaldi,                           :
                    Petitioner            :
                                          :
        v.                                :    No. 787 C.D. 2016
                                          :
Workers' Compensation Appeal              :
Board (City of Philadelphia),             :
                    Respondent            :

## **O R D E R**

AND NOW, this 9th day of January, 2017, the order of the Workers' Compensation appeal Board dated April 20, 2016, in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge