532 A.2d 456

**Michael F. LARTHEY, a Minor, by His Parents and Natural Guardians, Francis and Katherine LARTHEY, in Their Own Right, Appellants**

**v.**

**Brinley C. BLAND, M.D. and the Germantown Dispensary and Hospital.**

Superior Court of Pennsylvania.

Argued June 23, 1987.

Filed Oct. 16, 1987.

68

Howard J. Levin, Philadelphia, for appellants.

Charles B. Burr, II, Philadelphia, for appellees.

Before McEWEN, TAMILIA and HOFFMAN, JJ.

TAMILIA, Judge:

Following a writ of summons on January 8, 1982, plaintiffs/appellants filed a complaint in trespass on April 16,

1982 alleging that defendant/appellee, an obstetrician, was negligent in his handling of the birth and delivery of the minor appellant, Michael Larthey, on July 14, 1979. Appellee filed an answer and new matter denying appellants' factual averments and legal conclusions and specifically raising as a defense that appellants' action was barred by the applicable two-year statute of limitations, 42 Pa.C.S. § 5524. Discovery proceeded for approximately four years. Immediately prior to trial, appellee filed a motion for partial summary judgment alleging the action violated the statute of limitations. In addition to their answer in opposition to appellee's motion, appellants filed a cross-motion for summary judgment arguing that the tolling statute for minors, 42 Pa.C.S. § 5533(b), applies to appellants' case and tolled the statute of limitations.

By Order dated April 27, 1986, the trial court denied both parties' motions for summary judgment. However, on April 28, 1986, after selection of the jury had been completed, an in-chambers meeting occurred in which the Honorable Abraham J. Gafni reopened the issue of the statute of limitations operation and, after a discussion as to contradictions between appellants' deposition testimony versus their affidavits in opposition to appellee's motion for partial summary judgment, directed both sides to file supplemental briefs on the matter. Subsequently, on August 13, 1986, Judge Gafni amended his earlier Order and granted summary judgment in appellee's favor and denied appellants' cross-motion for summary judgment. Appellants timely appeal that judgment.[1]

As we stated in *Morgan v. Johns-Manville Corporation,* 354 Pa.Super. 58, 61, 511 A.2d 184, 186 (1986):

Summary judgment 'shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

1. An Order was entered by Judge White on March 4, 1986 stating that summary judgment was granted and plaintiff's complaint and co-defendant Brinley C. Bland's cross-complaint against defendant Germantown Dispensary and Hospital were dismissed with prejudice.

the moving party is entitled to a judgment as a matter of law.' Pa.R.Civ.P. 1035(b). When deciding whether to grant a motion for summary judgment, a court must draw all reasonable inferences in favor of the non-moving party, *Helinek v. Helinek*, 337 Pa.Superior Ct. 497, 502, 487 A.2d 369, 372 (1985), and view all of the evidence in a light most favorable to the non-moving party, *Rossi v. Pennsylvania State University*, 340 Pa.Superior Ct. 39, 48, 489 A.2d 828, 833 (1985). Moreover, summary judgment may be rendered only in cases that are free from doubt. *Id.*, 340 Pa.Superior Ct. at 44–45, 489 A.2d at 831; *Huffman v. Aetna Life and Casualty Co.*, 337 Pa.Superior Ct. 274, 277, 486 A.2d 1330, 1331 (1984).

*See Chandler v. Johns-Manville Corporation*, 352 Pa.Super. 326, 507 A.2d 1253 (1986). With these rules in mind, we review appellants' claim.

On July 14, 1979, appellant, Katherine Larthey, gave birth to her second child, Michael, at Germantown Hospital and Dispensary in Philadelphia. Appellee, Dr. Brinley C. Bland, was the obstetrician who provided the prenatal care to Mrs. Larthey and who delivered the child. Complications arose during the course of the delivery when the minor appellant's shoulders became impacted in the birth canal. This resulted in a brachial plexus injury which was diagnosed as Erb's Palsy. At issue is the applicability of what is known as the "discovery rule" to the running of the two-year statute of limitations, 42 Pa.C.S. § 5524.

As a general rule, the statute of limitations begins to run in a tort case when the cause of action accrues, meaning the date the injury is sustained. "The injury is done when the act heralding a possible tort inflicts a damage which is physically objective and ascertainable." *Ayers v. Morgan*, 397 Pa. 282, 290, 154 A.2d 788, 792 (1959). Once the statutory period expires, a party may only bring suit if he can establish that an exception to the general rule applies which acts to toll the statute of limitations. As the Supreme Court explained in *Pocono International Raceway*,

*Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 85, 468 A.2d 468, 471 (1983):

> The 'discovery rule' is such an exception, and arises from the *inability* of the injured, *despite the exercise of due diligence,* to know of the injury or its cause.... The salient point giving rise to the equitable application of the exception of the discovery rule is the inability, despite the exercise of diligence by the plaintiff, to know of the injury. A court presented with an assertion of applicability of the 'discovery rule' must before applying the exception of the rule, address the ability of the damaged party, exercising reasonable diligence, to ascertain the fact of a cause of action.
>
> . . . .
>
> We hold, therefore, that the 'discovery rule' exception arises from the inability, despite the exercise of diligence, to determine the injury or its cause, not upon a retrospective view of whether the facts were *actually* ascertained within the period.... (Emphasis in original).

*See Pastierik v. Duquesne Light Company*, 514 Pa. 517, 526 A.2d 323 (1987). "Where this rule is applied, the statute of limitations will not begin to run until the plaintiff has discovered his injury, or, in the exercise of reasonable diligence, should have discovered his injury." *Cathcart v. Keene Industrial Insulation*, 324 Pa.Super. 123, 135–136, 471 A.2d 493, 500 (1984) (citations omitted).

Initially in *Anthony v. Koppers Company, Inc.*, 284 Pa.Super. 81, 425 A.2d 428 (1980), *rev'd on other grounds*, 496 Pa. 119, 436 A.2d 181 (1981), a panel of this Court adopted a formulation of the "discovery rule" articulated by the Honorable Harry A. Takiff of the Court of Common Pleas of Philadelphia County in an asbestos case titled *Volpe v. Johns-Manville Corporation*, 4 P.C.R. 290 (1980), *aff'd*, 323 Pa.Super. 130, 470 A.2d 164 (1983). Quoting Judge Takiff's statement of the formula, the *Anthony* court stated:

*Ayers' [supra]* progeny have struggled primarily with the question of the reasonableness of plaintiff's conduct in attaining the appropriate level of cognitive knowledge which ultimately prompts a timely lawsuit. With the question of "reasonableness" as a constant qualification running through the decisional law, the principle emerges that three independent phases of knowledge must be known or knowable to plaintiff before the limitations period commences: (1) knowledge of the *injury,* (2) knowledge of the *operative* cause of the injury; and (3) knowledge of the *causative relationship* between the injury and the operative conduct. (Emphasis in original).

*Anthony, supra* 284 Pa.Super. at 96, 425 A.2d at 436 (quoting *Volpe,* 4 P.C.R. at —). *See DeMartino v. Albert Einstein Medical Center,* 313 Pa.Super. 492, 460 A.2d 295 (1983) (discussing the history of the "discovery rule" in Pennsylvania).

However, in the en banc decision of *Cathcart, supra,* also an asbestos case, we simplified the *"Volpe* test," explaining:

Although the Volpe test has a nice "ring" to it, it unnecessarily complicates the question of when the statute begins to run. For instance, what does "operative" in "operative cause" mean, and can it be possible for a plaintiff to know the "operative cause" of his injury yet not know the relationship between the "operative conduct" and the injury? The discovery rule has been stated in an understandable manner by our Supreme Court, and we see no reason to complicate the law by adopting a modified version of the rule for cases involving diseases contracted from exposure to hazardous substances. We find that the statute of limitations begins to run in "creeping disease" cases when the plaintiff knows, or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party's conduct. Stating the test in this manner will result in conformity with various other jurisdictions which have addressed this same problem. (Footnote omitted).

*Cathcart, supra* 324 Pa.Super. at 135–37, 471 A.2d at 500. Because *Cathcart* is later in time than both *Anthony* and our general affirmance of Judge Takiff's "discovery" formula in *Volpe v. Johns-Manville Corporation,* 323 Pa.Super. 130, 470 A.2d 164 (1983),[2] we find it to be controlling. *Cathcart* was filed one month after *Volpe.* As we discussed in *Wheeler v. Johns-Manville Corporation,* 342 Pa.Super. 473, 477, 493 A.2d 120, 122 (1985), the close proximity of these two conflicting decisions has created some disagreement as to which decision is controlling. *See Berardi v. Johns-Manville Corporation,* 334 Pa.Super. 36, 482 A.2d 1067 (1984). We agree with *Wheeler* that *Cathcart* should be followed because it is the most recent holding of the court en banc;[3] *Berardi,* being only a panel decision, cannot overrule the court en banc. *Accord Lucera v. Johns-Manville Corporation,* 354 Pa.Super. 520, 512 A.2d 661 (1986), and *Chandler v. Johns-Manville Corporation, supra* (both following *Wheeler* ).

The two-part *Cathcart* test has become this Court's accepted method of applying the "discovery rule" exception in

**2.** We note that the principle issue discussed in our en banc decision in *Volpe, supra,* dealt with whether the case lay in admirality jurisdiction or not. Our decision in *Volpe* did not expressly adopt the three-part "*Volpe* test" of Judge Takiff, but merely referred to the lower court's findings that the plaintiff therein knew of his injury, the operative cause of his injury, and the causal connection between his injury and the operative cause. The only reference to Judge Takiff's formula made by our Court in *Volpe* is as follows:

Judge Takiff found that by December 1973, Mr. Volpe knew of his injury, asbestosis, the operative cause of his injury, inhalation of asbestos dust and fibers, and the causal connection between his injury and his exposure to asbestos at work. . . . We agree with the judge below that once Mr. Volpe knew these facts, he had the ability to investigate and pursue his claim.

*Volpe, supra,* 323 Pa.Superior Ct. at 141, 470 A.2d at 170. In light of our Court's decision in *Cathcart, supra,* we do not believe that our en banc decision in *Volpe* conclusively adopted Judge Takiff's three-part test.

**3.** Likewise, we believe the pre-*Cathcart* decision of *Stein v. Richardson,* 302 Pa.Super. 124, 448 A.2d 558 (1982) (en banc), also applying the *Volpe* test in a medical malpractice case is no longer controlling in light of the more recent decision in *Cathcart.*

asbestosis and other "creeping disease" cases.[4] Although prior to *Cathcart* the three-part *Volpe* test was commonly applied in medical malpractice cases,[5] since *Cathcart*, the simplified two-part test was espoused in the medical malpractice case of *Groover v. Riddle Memorial Hospital,* 357 Pa.Super. 420, 516 A.2d 53 (1986). We believe *Groover* was correct in its recommendation that *Cathcart* be applied in all "discovery rule" cases.[6] *But cf. Held v. Neft,* 352 Pa.Super. 195, 507 A.2d 839 (1986) (a medical malpractice case applying the *Volpe* test without reference or discussion of *Cathcart* ). *Cathcart* 's inquiry into whether the injured knew or should have known he was injured and that his injury was caused by another is consistent with the Supreme Court's characterization of the "discovery rule" in *Pocono International Raceway* as arising "from the inability of the injured, despite the exercise of due diligence, to know of the injury or its cause." *Pocono International Raceway, supra,* 503 Pa. at 85, 468 A.2d at 471 (emphasis omitted).

■ Upon reviewing the record in a light most favorable to the appellants, we find as a matter of law that by August, 1979 appellants knew or reasonably should have known (1) that the minor appellant had been injured and (2) that his injury had been caused by another party's conduct.

4. See e.g., *Lucera, supra; Trieschock v. Owens Corning Fiberglas Company,* 354 Pa.Super. 263, 511 A.2d 863 (1986); *Mihalcik v. Celotex Corporation,* 354 Pa.Super. 163, 511 A.2d 239 (1986); *Morgan, supra; Chandler, supra; Burnside v. Abbott Laboratories,* 351 Pa.Super. 264, 505 A.2d 973 (1985); *Wheeler, supra; Price v. Johns-Manville Corporation,* 336 Pa.Super. 133, 485 A.2d 466 (1984); *Ciafrani v. Johns-Manville Corporation,* 334 Pa.Super. 1, 482 A.2d 1049 (1984).

5. See e.g., *Hunsicker v. Conner,* 318 Pa.Super. 418, 465 A.2d 24 (1983); *DeMartino, supra; Morgan v. Sbarbaro,* 307 Pa.Super. 308, 453 A.2d 598 (1982); *Petri v. Smith,* 307 Pa.Super. 261, 453 A.2d 342 (1982); *Stein, supra; Anthony, supra.*

6. The two-part *Cathcart* test is a simplification of the three-part *Volpe* test and speaks more directly to the view of this Court than does *Volpe* which simply affirmed the test applied by Judge Takiff in that case (*see* note 2). In *Cathcart,* the en banc court refined the *Volpe* test to bring it into conformity with its understanding of how the discovery rule was viewed by the Supreme Court.

The trial court concluded that both the sworn deposition testimony of the Lartheys and the representation of appellants' counsel on the record indicate there is no factual dispute as to the time when the Lartheys knew the nature of their son's injuries and that those injuries were caused by problems during the delivery. We agree. These admissions of record fix the time of the requisite knowledge at no later than August, 1979.

As stated earlier, during the delivery of Michael, on July 14, 1979, his shoulders became impacted in the birth canal. Mr. Larthey admitted that Dr. Bland informed him approximately twenty minutes after the delivery that complications had arisen during the delivery and there was a possibility that Michael's clavical may have been broken when he rotated the child (N.D. 1/30/84, p. 13). Mrs. Larthey admitted that when she got back to her room after the birth, her husband had told her their son had limited motion in his right arm and hand (N.D. 4/18/84, p. 23). Later that day, after x-rays had been taken of Michael, Dr. Cady, a pediatrician who treated Michael, informed both Mr. and Mrs. Larthey that Michael had Erb's Palsy and that his prognosis for his right arm was not good (N.D. 1/30/84, p. 24). Again, Mrs. Larthey admitted that she knew of her son's Erb's Palsy and shoulder impactment prior to her discharge from Germantown Hospital (N.D. 4/18/83, p. 40 and 1/30/84, p. 41).

Mrs. Larthey testified during depositions that when she spoke to Dr. Cady after the delivery of Michael, he did not tell her whether the Erb's Palsy came from the delivery of Michael or not, nor did she have any understanding when she spoke to Dr. Cady what the cause of the Erb's Palsy was, however, her own belief at that time was that the Erb's Palsy had come from the delivery:

BY MR. BLACK [Representing former co-defendant Germantown Hospital]:

Q. When Doctor Cady told you about the erbs palsy [sic], did you discuss—Could you tell us whether you discussed with him whether the erbs palsy [sic] came from the delivery of Michael?

A. No.

Q. Did you have an understanding when you spoke with Doctor Cady what the cause of the erbs palsy [sic] was?

A. No.

Q. Did you have any thought on your own what the erbs palsy [sic] had come from at that time?

A. From the delivery.

(N.D. 1/30/84, pp. 28–29.)

On August 22, 1979, approximately one month after Michael's discharge from Germantown Hospital, the Lartheys had their son examined by Dr. Warren Grover, a pediatric neurologist at St. Christopher's Hospital for Children, after Michael experienced a seizure problem. At that time, Dr. Grover told Mrs. Larthey that Michael had a brachial plexus injury and that he was suffering from Erb's Palsy (N.D. 4/18/83, p. 24), but more importantly, Mrs. Larthey admits Dr. Grover told her that her son's seizure problem was due to birth trauma:

[BY MR. BLACK:]

Q. Has any doctor ever told you or suggested to you that the seizure episode that Michael underwent had anything to do with his birth and delivery?

A. Doctor Grover had said that seizure probably was due to the trauma of the birth.

Q. And, do you know when he told you that? Doctor Grover told you that?

A.—August of '79, I think, when he had his seizure.

(N.D. 1/30/84, p. 29.) Likewise, Mr. Larthey also recalled Dr. Grover's opinion on the seizure:

[BY MR. BLACK:]

Q. Michael's had one seizure; is that correct?

A. Yes, uh-huh.

Q. And, has any doctor ever told you what in his or her opinion was the cause of that seizure?

A. Dr. Grover.

Q. What did he tell you?

A. He had said that it was possible that the seizure might have been brought on by the difficult delivery.

Q. And when did Dr. Grover tell you that?

A. I believe it was in '79.

(N.D. 1/30/84, pp. 18–19.)

It is clear from the Lartheys' deposition testimony alone [7] that they knew of Michael's injury if not shortly after birth then by the end of August, 1979. It is also clear that by that time they knew or reasonably should have known that Michael's injury was caused by the delivery administered by appellee, fulfilling the two-part test in *Cathcart*. Thus, based on the facts, the "discovery rule" exception to the statute of limitations is inapplicable in this case because appellants cannot claim an inability, despite the exercise of due diligence, to determine the injury or its cause—they have admitted such knowledge. *See Pocono International Raceway, supra*. Also, such a finding renders meritless appellants' claims of a tolling of the statute due to alleged concealment on appellee's part.

In addition to the deposition testimony, the trial court noted a letter sent in November, 1979 by Mrs. Larthey refusing to pay her bill to appellee, which reads as follows:

Dear Dr. Bland,

I received your bill for $167.00 and feel that in good conscience I can not pay it. I was very upset with my delivery problem.

During delivery Michael's right arm was injured to the entent [sic] that he could not lift it. My husband and I were so concerned that we took Michael to Dr. Grover a Pediatric Neurologist at St. Christophers. Michael underwent extensive testing and therapy for his arm.

Michael is now on phena barbitol, and will be for at least a couple years plus he must go to St [sic] Christophers monthly for therapy for his arm and that could be for quite some time.

7. During the course of the in-chambers conference held on April 28, 1986, after communicating with appellants, their counsel reaffirmed appellants' deposition testimony by stating that their trial testimony would be consistent with their responses in their depositions as opposed to their affidavits (N.T. 1/28/86, pp. 6–8).

Enclosed are photo-copies of the bills that we received from St. Christophers.

We agree with the trial judge that the letter demonstrates Mrs. Larthey knew or believed her son's injuries were related to appellee's performance during the delivery and are unpersuaded by Mrs. Larthey's affidavit's statement that her real motive for not paying the doctor's bill was her financial inability to do so.

We find appellants' reliance on our Opinion in *Petri, supra,* misplaced. *Petri* was a medical malpractice action in which we analyzed whether the plaintiff acted diligently in seeking the cause of her new born son's retardation where her physicians had informed her that "these things happen" and that "it was a one time thing that probably wouldn't happen again" and where she thought the condition was a birth defect; we concluded that the plaintiff was not unreasonable under the circumstances in failing to seek the cause of the child's problem. *See Burnside, supra.* Here, the question of diligence was not at issue since the appellants knew or reasonably should have known not only of Michael's injuries but also that the delivery, performed by appellee, was the cause of them.

■ Lastly, appellant would have us apply the amended provisions of the tolling statute for minors, 42 Pa.C.S. § 5533, retroactively to toll the statute of limitations with respect to the minor-plaintiff, Michael. Section 5533(b) provides:

(b) Infancy—If an individual entitled to bring a civil action is an unemancipated minor at the time the cause of action accrues, the period of minority shall not be deemed a portion of the time period within which the action must be commenced. Such person shall have the same time for commencing an action after attaining majority as is allowed to others by the provisions of this subchapter. As used in this subsection the term 'minor' shall mean any individual who has not yet attained the age of 18.

This amended section to 42 Pa.C.S. § 5533 was not effective until thirty days after May 30, 1984. Since Michael's cause of action accrued no later than August, 1979, the two-year

statute of limitations applicable to his action ran prior to the 1984 amendment to 42 Pa.C.S. § 5533. Consequently, Michael's cause of action, along with his parents, expired prior to the effective date of the amendment.

We find no support for appellants' argument that section 5533 should be applied retroactively to revive a cause of action already barred by the statute of limitations. Under the Pennsylvania Statutory Construction Act of 1972, 1 Pa.C.S. § 1501 et seq., section 1926 provides "[n]o statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." In *Commonwealth v. Baysore*, 349 Pa.Super. 345, 349, 503 A.2d 33, 35 (1986), we found that only "[a]n explicit use of the word 'retroactive' meets the requirements of a clear and manifest intent of the legislature that the act be applied retroactively." Since amended section 5533 does not contain an explicit provision that it be applied retroactively, we will not apply it so. *See Maycock v. Gravely Corporation*, 352 Pa.Super. 421, 508 A.2d 330 (1986) (held that a minor injured prior to the effective date of 42 Pa.C.S. § 5533(b), who attained majority before the effective date, and whose claims are time-barred by applicable statute of limitations prior to the effective date of § 5533(b) cannot rely on that section to revive a barred claim).

Accordingly, judgment affirmed.