560 A.2d 816

**Joanne M. STAUFFER, Appellant,**

v.

**John H. EBERSOLE, M.D., Martha Wagner and Lancaster General Hospital.**

Superior Court of Pennsylvania.

Argued March 3, 1988.

Filed June 28, 1989.

Terry S. Hyman, Harrisburg, for appellant.

Richard P. Mislitski, Harrisburg, for appellees.

Before BROSKY, BECK and CERCONE, JJ.

CERCONE, Judge:

This action was brought by appellant Joanne Stauffer who seeks damages for personal injuries which resulted from excessive exposure to radiation following a radical mastectomy. By order of June 23, 1987, the lower court granted summary judgment in favor of appellee Dr. Ebersole [1] finding that, as a matter of law, appellant's suit was not timely filed as she knew or had reason to know of her injury more than two years before suit was commenced. The sole issue presented by this appeal is whether the lower court erred in finding that appellant's claim was barred by the applicable statute of limitations.

Appellant initiated the instant suit in April, 1984, by writ of summons. A complaint was thereafter filed in which appellant alleged that in 1977, appellee had administered to her an overdose of radiation which years later resulted in severe injury to the nerves of her left arm and hand. Appellant further alleged that despite reasonable diligence, she did not discover the actual cause of her injury until May, 1982. Appellee filed a timely answer and new matter in which he raised the statute of limitations as a defense. After depositions were taken by each party, appellee filed a motion for summary judgment which was granted by the court on June 23, 1987. This appeal followed.

The facts of record are as follows. In January, 1975, appellant had a radical mastectomy performed on her left breast and two years later the cancer recurred. Following further surgery, appellant was sent to appellee for radiation therapy which was administered from late 1977 through early 1978. In late 1978 appellant began to experience numbness in the tips of some of the fingers on her left hand. At that time she spoke with her parent's treating physician about the symptoms and he related that they possibly were caused by scar tissue. However, the physician, Dr. Smith, did not correlate the scar tissue to appellant's radiation treatment. Appellant's cancer also occurred in her right breast in 1979 and when she was admitted for

---

1. Appellant discontinued suit as to the other named defendants.

surgery, she complained of the numbness in her fingers to her doctor. However, no tests were conducted and no diagnosis was made.

By 1980 appellant's numbness became acute, spreading from the tips of some of the fingers to her left hand and arm, accompanied by severe pain. Appellant sought the treatment of Dr. Medinger who conducted a battery of tests and in 1982 determined that the symptoms were caused by calcium deposits (fibrosis) forming in appellant's neck which pressed on the nerve endings leading to her left arm and hand. Dr. Medinger determined that the calcium deposits were the result of excessive exposure to the radiation administered to appellant in 1977. Appellant has now lost the use of her left and dominant hand and arm.

■ An action to recover damages for personal injuries is governed by a two-year statute of limitations. 42 Pa.C.S.A. § 5524(2). Thus, a plaintiff must commence an action within two years from the time he or she suffers an injury. However, when an injury is not readily discernible, the discovery rule, as discussed below, applies. Where this judicial doctrine is applied, the statute of limitations is tolled and does not begin to run until the plaintiff has discovered, or in the exercise of reasonable diligence should have discovered, the injury. *See Groover v. Riddle Memorial Hospital*, 357 Pa.Super. 420, 516 A.2d 53 (1986), *allocatur den.* 515 Pa. 600, 528 A.2d 957 (1987).

The discovery rule exception arises from the inability of the plaintiff, despite the exercise of diligence, to determine the existence of the injury or its cause. *See Larthey by Larthey v. Bland*, 367 Pa.Super. 67, 532 A.2d 456 (1987), *allocatur den. sub nom. Larthey v. Bland*, 518 Pa. 656, 544 A.2d 1343 (1988). The statute of limitations begins to run when a plaintiff knows, or reasonably should know that an injury has occurred and that the injury was caused by another party's conduct. *Citsay v. Reich*, 380 Pa.Super. 366, 370, 551 A.2d 1096, 1098 (1988); *Larthey, supra; Cathcart v. Keene Industrial Insulation*, 324 Pa.Super. 123, 471 A.2d 493 (1984). *See also Levenson v. Souser*, 384

Pa.Super. 132, 557 A.2d 1081 (1989) (*en banc*) (explicating history and current status of discovery rule in Pennsylvania).

Appellant maintains that the lower court's grant of summary judgment was unreasonable in her case because she was not expected, under the discovery rule, to bring suit when her symptoms first appeared but rather when her injury was diagnosed. In support of this allegation, appellant cites *Trieschock v. Owens Corning Fiberglas Company*, 354 Pa.Super. 263, 511 A.2d 863 (1986), *allocatur den.*, 514 Pa. 619, 521 A.2d 933 (1987). In that case, as part of a routine medical screening conducted by his employer, appellant was told by the company doctor that he was suspected of having asbestosis in March, 1982. On April 8, 1982, the diagnosis was confirmed by a specialist and appellant filed suit on April 6, 1984. If the statutory two year period period started to run from the diagnosis of the first physician in March, 1982, even though based on mere suspicion, appellant's suit was not timely filed. If the statute of limitations began with notification by the specialist of the cause of appellant's symptoms, the case was initiated in time. The *Trieschock* court opined:

> As a general principle, the statute of limitations begins to run in a tort case when the cause of action accrues. When the cause of action accrues is, of course, quite apparent when a collision forms the grounds for the suit. But when the injury is, as here, due to a "creeping disease," developing for years without symptoms after the exposure to the causative agents, that date is simply not ascertainable.... The question before us then is whether the fact that appellant was told that asbestos was suspected would establish, as a matter of law, that appellant knew, or should have known that he had asbestosis, an "injury."

354 Pa.Super. at 265–66, 511 A.2d at 865 (citations omitted). A plaintiff in a creeping disease case should not be required to have greater knowledge than his physicians about his medical condition. If those physicians are not

reasonably certain as to his diagnosis, then he certainly cannot be bound to have the knowledge necessary to start the statute of limitations running.

354 Pa.Super. at 268, 511 A.2d at 866. While *Trieschock* concerns the application of the discovery rule to a "creeping disease," we find it to be instructive to this case because appellant's injury began with minor symptoms which became progressively worse over a period of time.

■ The lower court found that although appellant's testimony was confusing, vague, and not responsive to the questions asked, it revealed that she knew of her injury in 1979 when she questioned Dr. Smith, her parent's physician, about the numbness in her fingers and he told her that her problems were caused by scar tissue. The question before us then is whether the fact that, without benefit of a medical workup, appellant was told her problems possibly were caused by scar tissue, established as a matter of law that appellant knew or should have known she had an injury caused by appellee.

A finding that appellant knew or reasonably should have known the cause of her symptoms when she spoke to Dr. Smith would lead to a result inconsistent with that in *Trieschock*. Dr. Smith's diagnosis was done without the benefit of exact medical knowledge. Dr. Smith neither performed tests nor examined the appellant. His opinion was based on his knowledge of appellant's medical history and what she described as symptoms. Thus, Dr. Smith's opinion was a mere suspicion absent any testing and did not allude to a proximate cause of appellant's symptoms. To put upon appellant the duty of knowing the nature of her ailment and its relation to her prior treatment before it is ascertained with a degree of certainty by the medical profession is a great burden to impose upon her. The information conveyed to appellant by Dr. Smith may well have been too imprecise to start the running of the statute of limitations against a lay person whose knowledge certainly is not as expert as that of a member of the medical profession.

312

Our inquiry, however, does not end here. While Dr. Smith's speculative diagnosis may have been insufficient to start the running of the statute of limitations, it activated a duty on appellant's part to determine with due diligence whether the radiation treatments did in fact cause her injury. "The absence of such a duty would mean that a potential plaintiff with a tentative diagnosis could wait indefinitely before acting to confirm it." *Trieschock*, 354 Pa.Super. at 268, 511 A.2d at 866.

Dr. Smith gave his tentative diagnosis to appellant regarding the numbness in her fingers in 1979. Shortly thereafter appellant underwent surgery for the removal of her right breast. While giving information to her doctor in relation to that surgery, appellant told him of the numbness she experienced in fingers of her left hand. Dr. Patterson noted her symptoms on his records but conducted no tests to determine their cause. Subsequent to cancer surgery, appellant was in need of further treatment. It was suggested by some doctors that she undergo chemotherapy while others recommended radiation. Because she was confused as to which treatment would be better for her, appellant consulted Dr. Medinger in 1980. By this time the numbness in appellant's hand was acute and accompanied by pain. Dr. Medinger did a complete workup on appellant and referred her to several specialists. In 1982 appellant's symptoms were diagnosed as fibrosis or calcium deposits in her neck which press on the nerves leading to her left arm and hand. It wasn't until then that medical experts determined appellant's injuries were caused by overexposure to radiation appellant had received while under treatment by Dr. Ebersole in 1977.

■ However, there are sufficient factual circumstances presented to us in this case which give rise to the question of whether appellant exercised due diligence in finding out the cause of the numbness in her hand. The information that she received from Dr. Smith concerning this physical condition in 1979 and her complaints with regard to this same physical condition to the doctors who performed can-

cer surgery on her, raised the issue of the presence or absence of due diligence on the appellant's part in determining the cause of her hand problem. Thus, whether plaintiff's lawsuit was brought within the statute of limitations is a question for the jury to determine based on the facts as developed at trial. Viewing the evidence in a light most favorable to appellant as the non-moving party, and drawing all reasonable inferences in her favor, we conclude that summary judgment was improperly granted. Order of the lower court granting appellee's motion for summary judgment reversed and case remanded for further proceedings in accordance with the foregoing. Jurisdiction relinquished.

BECK, J., files a dissenting opinion.

BECK, Judge, dissenting:

I respectfully dissent. Although I agree with the majority's general statement of the discovery rule and its origins, I disagree with its application of the rule to this case. I would affirm the trial court's grant of summary judgment for defendant on the ground that the plaintiff's claim is time barred.

Appellant Stauffer brought this medical malpractice action for personal injuries which allegedly resulted when appellee Dr. Ebersole negligently exposed her to excessive radiation during radiation treatments following a masectomy in 1977. Beginning in 1978, appellant experienced numbness in her left hand caused by the radiation. The condition gradually worsened over time, becoming much worse by 1982. In May 1982, appellant was definitively diagnosed as suffering from the results of excessive radiation, causing paralysis and pain in the left arm and hand. She instituted this lawsuit in April 1984.

The trial court granted summary judgment in favor of Dr. Ebersole, holding that Ms. Stauffer knew or should have known that she was injured and that Dr. Ebersole's actions were the cause of her injury more than two years prior to when she instituted suit. The trial court reached

this conclusion based on its review of the following evidence.[1]

Although Ms. Stauffer's testimony is somewhat confused, she clearly stated that as early as 1978, she knew that Dr. Ebersole might have done something wrong that had resulted in her symptoms. In her appellate brief, Ms. Stauffer again admits that she had a suspicion of wrongdoing by Dr. Ebersole at this early date. She undeniably knew that she had the symptoms, albeit minor, in 1978.

Moreover, the evidence reveals that Ms. Stauffer was concerned about these minor symptoms from the time they began through mid–1982. She repeatedly informed her various doctors of them. One of these doctors, Dr. Patterson, produced a note he had made of a conversation with Ms. Stauffer in 1979. The note indicates that Ms. Stauffer told him of her numbness and she attributed it to her radiation therapy with Dr. Ebersole. Similarly, another doctor with whom she consulted, Dr. Smith, told Ms. Stauffer that her symptoms resulted from scar tissue, although it appears that he did not tell her that the scar tissue resulted from excessive radiation. In any event, by 1980 Ms. Stauffer consulted with Dr. Medinger, who finally diagnosed her in 1982. Dr. Medinger's records indicate that he attributed her hand problems to the radiation as early as June 1980, but he did not recall telling Ms. Stauffer that fact until the final diagnosis.

The foregoing demonstrates that well before mid–1982, and perhaps as early as 1978 or 1979, Ms. Stauffer knew both of her injury and its possible cause. Although her symptoms were minor, she had them and had reason to suspect that her radiation treatment was the cause.

Ms. Stauffer argues that since her symptoms were initially so insignificant that her doctors did not order the tests

---

**1.** In reviewing a grant of summary judgment, the appellate court must view the evidence favorable to the non-moving party, the appellant. *Washington Federal Savings & Loan Assn. v. Stein,* 357 Pa.Super. 286, 515 A.2d 980 (1986). Analyzing the record facts favorable to the appellant, I find the trial court's rendition of facts to be substantially in accord with the record.

necessary to make a final diagnosis, she should not be held to have known of her injury and its cause until her symptoms became much more severe and were actually diagnosed in 1982. In support of this argument, Ms. Stauffer relies on *Trieschock v. Owens Corning Fiberglas Co.*, 354 Pa.Super. 263, 511 A.2d 863 (1987), *allo. den.*, 514 Pa. 617 and 619, 521 A.2d 932–3 (1988), which concerns the application of the discovery rule to a "creeping disease", namely, asbestosis. In *Trieschock*, plaintiff was unaware of his asbestosis symptoms. After a routine medical screening at work, the company doctor telephoned Trieschock and told him that asbestosis was suspected. Within one month, plaintiff saw a specialist and was diagnosed as having asbestosis. Plaintiff brought suit within two years of the diagnosis, but more than two years from the initial screening. Since the plaintiff was suffering from a creeping disease without any symptoms apparent to a layperson, and since the company doctor had merely expressed a suspicion of asbestosis, this court held that the discovery rule tolled the statute of limitations until the actual diagnosis and that the action was timely. Since Trieschock had no independent means of learning of his injury, this court reasoned that he should not be required to have greater knowledge of his medical condition that his physicians had.

The instant case is clearly distinguishable from *Trieschock*. Whereas Trieschock was unaware of any symptoms related to his injury and, therefore, dependent on his doctors to learn about the very existence of the injury, Stauffer experienced initial symptoms soon after the exposure to radiation. Moreover, as noted above, she admitted to knowing in 1978 that Dr. Ebersole may well have done something wrong in connection with her radiation treatment.

I, therefore, conclude that the evidence demonstrates as a matter of law that Stauffer knew or reasonably should have known that the numbness in her left hand was caused by radiation therapy more than two years before she instituted suit. Even if she only harbored suspicions of malpractice before the definitive diagnosis was made, it is clear that she

experienced symptoms of the injury and that the cause was knowable through the exercise of due diligence long before mid–1982. The law requires that a plaintiff make prudent legal inquiry as to the cause of her injury. *Bickford v. Joson,* 368 Pa.Super. 211, 533 A.2d 1029 (1987), *allo. den.,* 518 Pa. 647, 544 A.2d 959 (1988). *See also Levenson v. Souser,* 384 Pa.Super. 132, 557 A.2d 1081 (1989) (en banc). This Ms. Stauffer failed to do.

Any other conclusion would significantly alter the established discovery rule test by shifting the focus from what the victim knew or should have known to what the doctors reasonably should have told the victim. The discovery rule properly focusses on the victim and arises "from the inability of the injured, despite the exercise of diligence, to know of the injury or its cause." *Pocono International Raceway, Inc. v. Pocono Produce, Inc.,* 503 Pa. 80, 85, 468 A.2d 468, 471 (1983). Unless the plaintiff can demonstrate that her doctor, through fraud or concealment, caused her not to inquire further into her condition or its cause, the plaintiff is under a duty to exercise diligence in ascertaining the pertinent facts. *See Levenson v. Souser, supra* (citing *Molineux v. Reed,* 516 Pa. 398, 532 A.2d 792 (1987)). Since Ms. Stauffer does not allege any fraud or concealment by her treating physicians, she had no reason to relax her vigilance as to her condition or its cause. A plaintiff's duty of prudent inquiry cannot automatically be held in abeyance until a physician determines that it is appropriate to make a full medical inquiry and final diagnosis.

Equally dangerous would be the adoption of Ms. Stauffer's contention that we should not hold that she knew or should have known of her injury before 1982 because her initial symptoms were so minor. To permit such fine line drawing based upon the severity of the injury would create a potential for significant abuse of the discovery rule. It would require medical testimony to ascertain at what point an injury was sufficiently serious to trigger the running of the limitations period, thus opening the door to close medical distinctions not always pertinent to what the plaintiff

legally knew or should have known concerning her own condition.

Since I conclude that there remains no genuine issue of material fact as to when Ms. Stauffer discovered or should have discovered her injury or its cause, and that date was clearly more than two years before she instituted suit, I would affirm the entry of summary judgment for defendant.