**E.J.M. v. Archdiocese of Philadelphia**

*Arnold Levin,* and *Lawrence S. Berman,* for plaintiffs.
*John P. O'Dea, Karen A. Greco, Patrick I. McDonald,* and *Bruce W. McCullough,* for defendant Archdiocese of Philadelphia.

*Martin G. Malloy,* for defendant Franciscan Fathers of Green Bay.

*Eugene J. Maginnis,* for defendant Terrance Pinkowski.

SHEPPARD, *J.,* July 16, 1992—This opinion is submitted relative to plaintiff's appeal of this court's February 19, 1992, order granting moving defendant's[1] motion for

---

1. This appeal concerns only the summary judgment motion filed by the Franciscan Fathers of Green Bay.

Franciscan Fathers originally filed this motion in May 1990. On January 25, 1991, the Honorable Samuel M. Lehrer denied the motion (See Exhibit "A" attached). Subsequently, Judge Lehrer also denied Franciscan Fathers' motion for reconsideration (See Exhibit "B" attached).

On October 24, 1991, Franciscan Fathers filed a second motion for summary judgment (which addressed the identical issues presented before Judge Lehrer) in light of the recent holding of *Baily v. Lewis,* 763 F. Supp. 802, *aff'd,* 950 F.2d 721 (3d Cir. 1991).

On January 10, 1992, this court vacated its January 10th order, pending reconsideration, and scheduled oral argument. On February 19, 1992, upon reconsideration and after oral argument, this court granted summary judgment and dismissed plaintiff's complaint as to moving defendant, Franciscan Fathers only. This appeal followed.

summary judgment and dismissing plaintiff's complaint. For the reasons stated, this court's order should be affirmed.

## DISCUSSION

On August 4, 1989, plaintiff "E.J.M." filed a complaint alleging injuries as a result of sexual abuse by defendant, Father Terrance Pinkowski. Essentially, Count I is a claim for sexual assault and battery and Count III is a claim for intentional infliction of emotional distress.[2] E.J.M. seeks damages for these intentional torts from moving defendant based on either a theory of negligent hiring and supervision or respondeat superior.

In seeking to maintain these causes of action, plaintiff urges this court to apply the discovery rule[3] thus tolling

---

2. On December 1989, Count II, a claim for clerical malpractice was dismissed for failure to state a cognizable cause of action.

Although Count III is not presently involved, this court notes parenthetically that Pennsylvania does not recognize a cause of action for the intentional infliction of emotional distress. *Ford v. Isdaner*, 374 Pa. Super. 40, 44, 542 A.2d 137, 139 (1988); *Kazatsky v. King David Memorial Park Inc.*, 515 Pa. 183, 527 A.2d 988 (1987) (refusing to expressly adopt Restatement Torts 2d, §46.(1)).

3. The discovery rule is "an equitable provision created to protect plaintiffs who are unaware either that they have been injured or of who caused their injury" by tolling the running of the statute of limitations until the plaintiff should *reasonably* know that he has been injured and that the injury was due to another's conduct. *Redenz by Redenz v. Rosenberg*, 360 Pa. Super. 430, 434, 520 A.2d 883, 885 (1987). (emphasis added)

Examples of the application of the discovery rule by Pennsylvania courts are: *Ayers v. Morgan*, 397 Pa. 282, 154 A.2d 788 (1959) (surgical sponge left in abdomen nine years earlier); *DeMartino v. Albert Einstein Medical Center*, 313 Pa. Super. 492, 460 A.2d 295

the two-year statute of limitations for intentional torts, 42 Pa.C.S §5524. This is vital to plaintiff's suit in that the last alleged act of abuse occurred in 1981 and this action was brought in August 1989. Further, plaintiff reached the age of majority in 1980.

Generally, the statute of limitations accrues for assault from the time that the victim apprehends imminent contact and for battery at the time of contact. Restatement Torts 2d, §§21 and 13 respectively; *Levenson v. Souser,* 384 Pa. Super. 132, 557 A.2d 1081 (1989). Plaintiff has the burden to prove that the statute of limitations has not run, and that the discovery rule applies. *Coyne v. Porter-Hayden Co.,* 286 Pa. Super 1, 428 A.2d 208 (1981).

Here, the recent ruling in *Baily, supra,* is dispositive on the issues of the applicability of the discovery rule and the motion for summary judgment. The *Baily* court held that the Pennsylvania statute of limitations for an action based upon sexual abuse of a minor was not tolled during that time period that claimant repressed all memory of the incidents or was due to the perpetrator's fraudulent concealment that the acts were other than normal and healthy. *Baily, supra* at 804-11.

---

(1983) (negligent root canal); *Trieschock v. Owens Corning Fiberglass Co.,* 354 Pa. Super. 263, 511 A.2d 863 (1986) (asbestos); *Cathcart v. Keene Indus. Insulation,* 324 Pa. Super. 123, 471 A.2d 493 (1984) (asbestos); *Smith v. Bell Tel. Co.,* 397 Pa. 134, 153 A.2d 477 (1959) (underground telephone line conduit crushed and blocked sewage pipe); and *Lewey v. H.C. Frick Coake Co.,* 166 Pa. 536, 31 A. 261 (1895) (removal of coal from plaintiff's land via access from defendant's land). *These examples, while not exclusive, demonstrate that no amount of vigilance would have enabled plaintiff to discover the injury within the statute of limitations period. Pocono International Raceway Inc. v. Pocono Produce,* 503 Pa. 80, 85, 468 A.2d 468, 471 (1983). (emphasis added)

The *Baily* court noted that cases involving this issue can be defined by two basic fact patterns: (1) cases where the claimant claims to have known about the acts of sexual abuse at or before majority but did not realize other physical and psychological problems were caused by the molestation (type one case), and (2) cases where claimant alleges that the memories of abuse were repressed until shortly before filing suit (type two case). *Id.* at 805, citing to *Johnson v. Johnson,* 701 F. Supp. 1363, 1367 (N.D. Ill. 1988).[4] *Baily* was a type two case. There, the claimant alleged that he repressed the acts of continual abuse which began when he was 12 and continued up to the age of 17. The claimant further alleged that he did not become aware, until some 15 years later after

---

4. Courts in Indiana, Montana and California have declined to apply the discovery rule to type one cases, finding that the claimant was put on notice that injury may be present and that there was a duty to investigate. See *Hildebrand v. Hildebrand,* 736 F. Supp. 1512, 1521 (S.D. Ind. 1990); *E.W. v. D.C.H.,* 231 Mont. 481, 754 P.2d 817, 820 (1988); *DeRose v. Carswell,* 196 Cal.App.3d 1011, 1020, 242 Cal. Rptr. 368, 373 (6th Dist. 1987). But see, *Osland v. Osland,* 442 N.W.2d 907, 909 (N.D. 1989); *Hammer v. Hammer,* 142 Wis.2d 257, 418 N.W.2d 23, 27 (1987) (both applying the discovery rule in type one cases where the emotional trauma justifies tolling of the statute of limitations if plaintiff knew of abuse but did not understand its connection to later emotional and physical difficulties).

Courts in California, Michigan and Illinois have applied the discovery rule to type two cases. See *Mary D. v. John D.,* 216 Cal.App.3d 285, 264 Cal. Rptr. 633 (6th Dist. 1989); *Meiers-Post v. Schafer,* 170 Mich. App. 174, 427 N.W.2d 606 (1988); *Johnson, supra.* But see *Tyson v. Tyson,* 107 Wash. 2d 72, 727 P.2d 226 (1986) (later overruled by statute); *Lindabury v. Lindabury,* 552 So.2d 117 (Fla. Dist. Ct. App. 3d Dist. 1989); *Petersen v. Bryen,* 106 Nev. 271, 792 P.2d 18 (1990).

therapy, of the connection between the abuse and his injury.

In the instant case, the claimant arguably does not fit either category. In his affidavit, (see Exhibit "C" attached) E.J.M. states that (1) he never considered or knew that defendant's acts constituted abuse (thus there was no knowledge of sexual abuse as required in type one cases) and (2) he never repressed the memories of the defendant's acts (thus the absence of a type two pattern).

Even though neither of the *"Baily* case categories" fits precisely here, the plaintiff's causes of action must fail. Application of the discovery rule to the facts of this case would be contrary to existing Pennsylvania[5] law interpreting the discovery rule as a limited exception to

---

5. Plaintiff relies on *Greenberg v. McCabe,* 453 F. Supp. 765, *aff'd,* 594 F.2d 854 (3d Cir. 1979) for authority that Pennsylvania courts apply the discovery rule to cases where the claimant was mentally unstable and unable to realize that injury has occurred. This interpretation is misguided. In *Greenberg,* the court recognized claimant's mental incapacity and incompetency as tolling the statute of limitations due to the fact that the perpetrator was the claimant's psychologist and had prescribed drugs that precluded plaintiff from discerning her injury. That court stated however that the decision in no way affected the general rule that the statute of limitations was not tolled for persons under a disability including those who are mentally incompetent. *Id.* at 767.

The only other significant Pennsylvania case appears to be *Bowser v. Guttendorf,* 373 Pa. Super. 402, 541 A.2d 377 (1988). The *Baily* court analyzed and interpreted *Bowser* as evidencing the Pennsylvania courts' reluctance to toll the statute of limitations even where (as in the instant case) the claimant fails to timely safeguard his interest due to a personal disability, i.e., claimant thought he was at fault for the acts, and this affected his ability to assert his claim within the statute of limitations period. *Baily, supra* at 808-809. (See Exhibit "C")

the statute of limitations. In Pennsylvania, the discovery rule is applicable only where the claimant could not, despite reasonable diligence, have discovered an injury or its cause. The party seeking to invoke the rule is under "a heavy burden of inquiry." *Lowe v. Johns-Manville Corp.*, 604 F. Supp. 1123, 1127 (E.D. Pa. 1985). Under Pennsylvania law, reasonable diligence is not a subjective, but rather an *objective* standard applied equally to all individuals. *Redenz, supra* at 434, 520 A.2d at 886. (emphasis added) Thus, the victim's ignorance with respect to injury is not, in and of itself, dispositive of the question.

Accordingly, this court must determine whether a reasonable person in the claimant's position would have been unaware of the salient facts. *Id.* The claimant need not know that he has a cause of action or that the injury was caused by another party's wrongful conduct, for "once [the plaintiff] possesses the salient factors concerning the occurrence of his injury and *who* or *what* caused it, he has the ability to investigate and pursue his claim." *Vernau v. Vic's Market Inc.*, 896 F.2d 43, 46 (3d Cir. 1990). (citations omitted, emphasis in original) Here, the claimant was born in 1962. The abuse was alleged to have begun in 1976 and continued until 1981, at which time the claimant had already achieved the age of majority. Thus, at that time of majority, the question becomes whether the reasonable person would have been able to discern that an injury has occurred. *Stauffer v. Ebersole*, 385 Pa. Super. 306, 560 A.2d 816 (1989). This court finds that a reasonable person of the age of majority would be able to discern the severity and consequences of sexual abuse. Thus under these facts, E.J.M.'s claim that he had no knowledge of the assault and battery against his person fails the applicable objective test.

Although this result may seem harsh, to hold otherwise would undermine the purpose of and undercut the protection intended by the statute of limitations. Likewise, although the issue whether plaintiff acted with due diligence under the discovery rule is usually one for the jury, in a case where no genuine issue of material fact exists, the grant of summary judgment is proper. *Orozco v. Children's Hospital of Philadelphia,* 638 F. Supp. 280, *aff'd,* 813 F.2d 398 (3d Cir. 1987).

For these reasons, this court's order should be affirmed.

## EXHIBIT "A"

## ORDER

And now, January 25, 1991, upon consideration of defendant Franciscan Fathers of Green Bay's motion for summary judgment and plaintiffs' answer and memorandum of law in opposition thereto, it is hereby ordered and decreed that the motion for summary judgment is denied.

## EXHIBIT "B"

## ORDER

And now, March 3, 1991, upon consideration of defendant Franciscan Fathers of Green Bay's motion for reconsideration, it is ordered and decreed that the motion is denied.

## EXHIBIT "C"

E.J.M., first being duly sworn, deposes and states as follows:

"(1) I am the plaintiff in the above-entitled action.

"(2) At the time I was being sexually abused by defendant Father Terrance Pinkowski I did not realize, appreciate, understand or consider that I was a victim of sexual abuse.

"(3) I come from a devout Roman Catholic family and all of us were baptized, confirmed and regularly celebrate weekly mass and receive the holy sacraments through the church. My family and I had great admiration, trust and respect for Roman Catholic priests. Beginning in 1976, defendant Father Terrance Pinkowski became our family priest, and was an honored guest who was frequently in our home. He became almost like a member of our family. My parents were very pleased that he took such an interest in me.

"(4) At an early age I decided to become an ordained Roman Catholic priest. From 1975 through 1981 defendant Father Pinkowski acted as my spiritual director, and prepared me for the priesthood. He had tremendous control over my life. In the course of preparing me for the priesthood, defendant Father Pinkowski committed against me (what I now know to be) sexual abuse. At the time of the acts he told me that this therapy was necessary for my spiritual growth and preparation for ordination, and that it would rid me of pride unpleasing to God.

"(5) Because of the aspiration I had to be a priest and the exalted position in which priests were regarded within my family, I did not believe or consider that defendant Father Pinkowski's actions with me were wrong. My mindset was that—because he was a priest—he had to be right about this therapy and training being necessary

for me to become a good priest. I dealt with my confusion about this therapy by rationalizing that there was something wrong with me. I thought I had a problem. Defendant Father Pinkowski told me he loved me, and I believed him. I trusted him.

"(6) I was married on June 25, 1988. In late April or early May 1988 I began making wedding preparations. My parents expected that defendant Father Pinkowski would be invited. They were shocked when I told them that I did not want him to attend my wedding. They told me that if he was not invited to the wedding that they would not come. I then revealed to them that I did not want him to come to the wedding because of what he had done to me, which I then explained to them.

"(7) Prior to this time I had never told anyone what had happened and I never considered that defendant Father Pinkowski's actions were abusive and injurious to me. I felt I was at fault. I felt guilty and sinful.

"(8) After my revelation, my father contacted Father Gulas, the Provencial, about the matter. Father Gulas offered to pay for any counseling I required. I started counseling in October 1988. It is only since then that I have come to realize, appreciate or understand that my psychological and emotional problems are the result of the injuries I received from the sexual abuse by defendant Father Pinkowski."